[No. 8456. Department Two. March 26, 1910.]

THE STATE OF WASHINGTON, *Respondent*, v. FRED PEACOCK, *Appellant*.[1]

HOMICIDE—EVIDENCE—DYING DECLARATION. A dying declaration made December 10th does not identify with sufficient certainty a prior written statement signed and sworn to December 3d, at a time when deceased was seriously ill but not under a sense of impending death, where, a few hours before death, the deceased, in answer to questions, stated that the "statements made to Mr. S. (the notary) a week ago today" were true; and the same is inadmissible although the statement of December 10th was made under a sense of impending death, in view of the rule that dying declarations must be received with great caution.

EVIDENCE—HYPOTHETICAL QUESTIONS—DISCRETION. It may not be an abuse of discretion to permit physicians to answer hypothetical questions although some of the facts assumed are based upon meager evidence.

APPEAL — REVIEW — INSTRUCTIONS—REQUESTS. Error cannot be based upon the refusal to give certain instructions where no request therefor was made.

Appeal from a judgment of the superior court for Wahkiakum county, Rice, J., entered April 10, 1909, upon a trial and conviction of manslaughter. Reversed.

*J. Bruce Polwarth, John Manning, McAllister & Upton,* and *B. E. Leonard,* for appellant.

*Frank Oleson* and *William Stuart,* for respondent.

[1]Reported in 107 Pac. 1022.

PARKER, J.—The defendant, a practicing physician, is accused of the crime of manslaughter. The facts charged against him are, in substance, that on the 27th day of November, 1908, he unlawfully employed an instrument on the person of Madeline Longtain, she being then pregnant, with intent to thereby produce a miscarriage, the same not being necessary to preserve her life, and did then and there produce a miscarriage upon the person of Madeline Longtain, and by said operation and miscarriage he inflicted upon her person mortal injuries from which she died on the 10th day of December, 1908. Upon a plea of not guilty a trial was had, resulting in a verdict of guilty against the defendant. His motion for a new trial being overruled, judgment and sentence was entered accordingly, and an appeal taken therefrom to this court.

The principal question necessary for us to notice upon this appeal is the alleged error of the trial court in admitting in evidence the dying declarations of Madeline Longtain. The facts upon which this question must be determined are as follows: On December 3, 1908, the deceased made certain statements relating to the treatment of and operations performed upon her by the defendant at and prior to the time charged. These statements were made in answer to questions asked her by E. S. Snelling, and were at the time written down in shorthand by a stenographer, reduced to typewriting, covering some six pages of ordinary typewritten matter, signed by deceased, and sworn to before a notary public.

While these statements were made at a time when the deceased was seriously ill, the evidence in the record falls far short of showing that they were made under a sense of impending death. Learned counsel for the state do not seriously contend that they were so made, or that they would be admissible as dying declarations, standing alone; but it is contended that they were later reaffirmed under such circumstances as to give them all the force of dying declarations and render them admissible in evidence as such. The alleged re-

affirmance of these statements occurred as follows: On the night of December 9th the deceased said to her nurse, in reply to a question, "I don't feel very good. I think I am going to die." The next day, December 10th, at about 11:00 o'clock a. m., Mr. Oleson, the prosecuting attorney, went to the room of the deceased with a stenographer, evidently for the purpose of procuring a dying declaration. At that time the deceased was "dozing," as a witness expressed it, and it was concluded they would return to procure her statement at 1:30 in the afternoon. At that time Mr. Oleson and the stenographer returned, when he asked, and was answered by the deceased, as follows:

"Q. How do you feel Madeline? A. Pretty bad. I think I am going to die. Q. Do you think you are going to die, Madeline, don't you think you are going to get well? A. No, I don't think I am going to get well. Q. Madeline, are the statements you made to Mr. Snelling a week ago today true? A. Yes, they are true."

There was no reference to any prior statements made by the deceased other than that indicated in this last question and answer. The written statements she had signed and sworn to on December 3 were not produced or shown to her, nor were they referred to as statements which had been signed and sworn to by her, nor was the subject-matter of the statements mentioned in the question or answer. She died on December 10th, a few hours after making this last statement.

It may be conceded that the statement made on December 10th was made under a sense of impending death, and so far as the showing in that regard is concerned it would be admissible as a dying declaration, but it will be noticed that this last statement is meaningless except as a reaffirmance of prior statements. Upon the theory that the statements of December 3d were sufficiently identified and reaffirmed by that of December 10th to make them a part of her declaration of December 10th, the learned trial court admitted a part of

them in evidence as her dying declaration. We are then confronted with the single question, Was there such a certain reference to and reaffirmance of the former written and signed statements by the latter, as to make the former in fact her dying declarations, as if they had been actually made or repeated on December 10th?

Dying declarations are to be received in evidence with great caution. As was said by this court in *State v. Eddon,* 8 Wash. 292, 297, 36 Pac. 139:

"The trouble with this character of evidence is, that it is in its nature hearsay evidence and is in practical conflict with the constitutional right of the defendant to meet the witnesses, that testify against him, face to face; and is in conflict with his right to cross-examine such witnesses; and it is only tolerated on the ground of necessity growing out of the fact that murderers, by putting the witnesses, who are generally sole witnesses of the crime, beyond the power of testifying by killing them, will escape the consequences of their crime. It can only be justified on the presumption that the solemn realization of impending and inevitable death will take the place of the solemnity of an oath; and the greatest care and caution ought, therefore, to be exercised in the admission of this character of testimony."

These views have been asserted in varying language by many courts and text writers. *State v. Johnson,* 118 Mo. 491, 502, 24 S. W. 229, 40 Am. St. 405; *State v. Medlicott,* 9 Kan. 357; *Bell v. State,* 72 Miss. 507, 513, 17 South. 232; Wharton, Homicide (3d ed.), p. 975. Not only must great care be exercised when considering the frame of mind of deceased at the time of making the statements, but it must also appear, with a great degree of certainty, that the statements attributed to the deceased are in fact the statements of the deceased. And when it is sought to show that former statements of the deceased were reaffirmed under a sense of impending death, then such statements must be referred to and reaffirmed with such a degree of certainty that there can be no doubt as to what previous statements are meant by the deceased to be reaffirmed. Where the statements sought to be

introduced in evidence are all made at one time without any reference to other previous statements made by deceased, there will usually be but little difficulty in determining what such statements really are; but when the words uttered at the time of the dying declaration are meaningless except as they refer to some former statement, there may be, as in this case, room for doubts to arise upon the question of the identity of the statements previously made and then referred to.

Learned counsel for the state have cited cases from other states in support of the general rule that previous statements may become admissible as dying declarations by re-affirmance by the deceased while under a sense of impending death. They cite the following: *Johnson v. State*, 102 Ala. 1, 16 South. 99; *People v. Crews*, 102 Cal. 174, 36 Pac. 367; *Snell v. State*, 29 Tex. App. 236, 15 S. W. 722, 25 Am. St. 723; *Wilson v. Commonwealth*, 22 Ky. Law 1251, 60 S. W. 400; *Mockabee v. Commonwealth*, 78 Ky. 380; *Bryant v. State*, 35 Tex. Cr. 394, 33 S. W. 978, 36 S. W. 79; *State v. MvEvoy*, 9 S. C. 208.

We do not think any of these cases are controlling under the facts presented here. We think in all of them, so far as can be gathered from their language, the prior statements of the deceased, reaffirmed under conditions making it a dying declaration, was identified by the deceased with much greater certainty than was the statement of December 3d identified by the deceased in this case.

In the case of *Harper v. State*, 79 Miss. 575, 31 South. 195, 56 L. R. A. 372, we find a situation somewhat analogous to that here involved. A statement appears to have been prepared in writing with intent that it be signed by the deceased when he came to think he would die. In passing upon the admissibility of this paper as a dying declaration, the court said:

"Moreover, we think a declaration prepared by a person in full possession of his mental faculties, and in confident hope

of recovery, to be signed in possible event of a subsequent
conviction of a fatal termination, is too much tainted to be
admissible in evidence.   Such a paper at the time of its
preparation goes for nothing, of course; and when the time
comes for execution of it, the tendency of human nature *in
extremis* to be consistent and follow a formula, without effort,
vitiates it.   Such an instrument cannot be said to be the
free and voluntary act of the person, originated and ex-
ecuted under a solemn sense of impending death."

See, also, *People v. Fuhrig*, 127 Cal. 412, 59 Pac. 693;
*Cooper v. State*, 89 Miss. 351, 42 South. 666.

We think no court has gone to the extent of admitting in
evidence statements, as dying declarations, made prior to
the deceased's conviction of impending death, and claimed to
have been reaffirmed by the deceased under a sense of impend-
ing death, except where the former statement has been re-
ferred to and identified with greater certainty than was
shown in this case.   We are of the opinion that the learned
trial court was in error in admitting in evidence the state-
ment of Madeline Longtain made on December 3d as a part
of her dying declaration, claimed to have been made on De-
cember 10th.

Little need be said concerning the remaining assignments
of error, since for the most part they relate to matters
which will not likely occur upon a new trial.   Certain hypo-
thetical questions, propounded and permitted to be answered
by physicians as expert witnesses in behalf of the state, were
objected to by counsel for appellant, upon the ground that
the evidence did not tend to show all of the facts assumed by
the questions.   We think that while the evidence was some-
what meager relative to some of the assumed facts, we cannot
say that the court abused its discretion in permitting the
questions to be answered.   Error is claimed upon the court's
neglect to instruct the jury upon certain matters; but no
request for such instructions was made, and the errors claimed
do not relate to such matters as the court is bound to in-
struct upon, without request.

It is also contended that defendant's motion for a directed verdict should have been granted. This motion was based upon the theory that the evidence was such that the court should have taken the case from the jury and directed a verdict of not guilty. In this we think there was no error. In view of the fact that a new trial must be granted we deem it unwise to discuss the evidence. We conclude that a new trial must be granted. The judgment is therefore reversed, with directions to grant a new trial.

Rudkin, C. J., Mount, Crow, and Dunbar, JJ., concur.