[No. 10870. Department One. February 26, 1913.]

Louis Knutson, *Respondent*, v. Moe Brothers, Incorporated, *Appellant*.[1]

Evidence—Testimony at Former Trial—Certification of Writing—Notice—Admissibility. Under Rem. & Bal. Code, § 1247, providing that the testimony of an absent witness, given in at a former trial, when reported by a stenographer and certified by the trial judge upon three days' notice, may be given in evidence, it is not necessary that notice be given of an intention to recertify testimony that was certified by the trial judge to be used on an appeal.

Evidence—Hypothetical Questions—Variance—Materiality. It is not a material variance between the facts of the case and a hypothetical question, that the plaintiff reached camp unaided by walking and crawling half a mile instead of being taken there; nor that he was attended by a physician at Seattle, instead of being taken home from Seattle; nor that he was "laid up" at home about a month, instead of "staying at home in bed for about a month."

Trial—Objections to Evidence—Scope and Questions Raised. An objection to a hypothetical question of some length, and stating several hypotheses, in that it contained a "mass of irrelevant matter," and that the "hypothesis stated" is not supported by the evidence, is too general; since appellant should have pointed out the matter to be eliminated and wherein the "hypothesis stated" was not borne out by the evidence.

Damages—Personal Injuries—Excessive Verdict. A verdict for $5,000 for personal injuries sustained by a logger, struck on the head by a log, is so excessive as to show passion and prejudice, and should be reduced to $2,500, where it appears that plaintiff returned to his work in less than a month and continued therein for nearly a year at an increased wage, without any complaint for injury to his back or permanent disability, or any treatment except for a scalp wound; and in a written statement for membership in a lodge, he represented that he was well and sound.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 27, 1912, upon the verdict of a jury rendered in favor of the plaintiff for $5,000, for personal injuries sustained through the fall of a log from a car. Reversed, unless $2,500 is remitted.

[1]Reported in 130 Pac. 347.

*Peterson & Macbride,* for appellant.

*Martin J. Lund,* for respondent.

Gose, J.—The plaintiff in this action seeks to be recompensed for a personal injury sustained while employed by the defendant, in consequence of its alleged negligence. There was a verdict and judgment in his favor for $5,000, which the defendant seeks to reverse or modify by this appeal.

The errors suggested are, (1) that the respondent was guilty of contributory negligence; (2) that the testimony of Bert Nelson should not have been admitted; (3) that an objection interposed to a hypothetical question should have been sustained; and (4) that the verdict was excessive. These questions will be considered in the above order.

The first inquiry was settled adversely to the appellant's contention on a former appeal upon substantially the same facts as are shown by the record on this appeal. *Knudsen v. Moe Brothers,* 66 Wash. 118, 119 Pac. 27.

After showing that Bert Nelson, who had testified in the former trial, could not be found, and the exercise of due diligence in endeavoring to find him, the respondent, having given three days' notice to the opposite party together with a copy of his testimony in the other trial, was permitted to read it in evidence. The statute, Rem. & Bal. Code, § 1247, provides:

"The testimony of any witness, deceased, or out of the state, or for any other sufficient cause unable to appear and testify, given in a former action or proceeding, or in a former trial of the same cause or proceeding when reported by a stenographer or reduced to writing, and certified by the trial judge, upon three days' notice to the opposite party or parties, together with service of a copy of the testimony proposed to be used may be given in evidence in the trial of any civil action or proceeding, where it is between the same parties and relates to the same matter."

The testimony at the former trial had been reduced to writing and certified by the trial judge, to be used on the

first appeal. The appellant's contention is that it was incumbent upon the respondent to give it three days' notice of his intention to have the testimony re-certified, and that having failed to do so and there having been no re-certification, the testimony was inadmissible. The statute does not require so useless a formality.

The respondent propounded a hypothetical question to a physician, covering one and a half pages of the printed brief. The objection was:

"Just a minute, now, before that is answered, we object to that question as, first, containing a mass of irrelevant matter which might have effect upon the opinion of the physician, yet it is not properly considered in a case of this character; and second, that the hypothesis stated is not supported by the evidence."

The argument is that the hypothetical question is not a fair statement of the material facts which the evidence tends to establish, and that it embraces facts not within the testimony. The respondent testified that, after he was injured, he succeeded in reaching the camp, a half mile distant, unaided, by walking and crawling, with intervals of resting. The hypothetical question assumed that he was taken to the camp. The variance was immaterial. He further testified that he was taken to his home from the camp and taken to Seattle the following day, where he was attended by a physician; but there is no testimony that he was taken home from Seattle, as the question assumed. This would seem too immaterial a circumstance to require a reversal. He also testified, and his wife corroborated his statement, that he "was laid up" at home for about a month. The question assumes that he "stayed at home in bed for about a month." The variance was a material one had it been properly called to the attention of the court.

It is the duty of counsel to frame his hypothetical question so as to fairly come within the scope of the testimony. Stated in another form, there must be evidence tending to prove

the material facts assumed in the hypothetical question. The objection that the question contained "a mass of irrelevant matter," and that the "hypothesis stated" is not supported by the evidence, was not sufficiently specific to direct the attention of either the court or counsel to the substance of the objection. To say that a question of such length embraces a mass of irrelevant matter was too general to rise to the dignity of an objection. The court, in the exercise of the discretion which the law gives it (*State v. Peacock*, 58 Wash. 41, 107 Pac. 1022, 27 L. R. A. (N. S.) 702) would have been warranted in requiring the elimination of the immaterial matter embraced in the question, but the failure so to do neither benefited the respondent nor prejudiced the appellant. And the objection that the "hypothesis stated" is not borne out by the evidence, when there were several hypotheses, is equally unavailing. The appellant should have fairly pointed out wherein the hypotheses varied from the evidence. Had this been done, the court would have been afforded a basis for an intelligent ruling, and counsel could then have recast his question, or could have temporarily withdrawn it for the purpose of putting in evidence, if he had any, to meet the situation. This view has the support of the following authorities: 38 Cyc. 1388; *In re Barber's Appeal*, 63 Conn. 393, 27 Atl. 973, 22 L. R. A. 90; *Styles v. Decatur*, 131 Mich. 443, 91 N. W. 622; *Missouri Pac. R. Co. v. Hall*, 66 Fed. 868; *Burlington Ins. Co. v. Miller*, 60 Fed. 254. The reason for the rule is thus succinctly stated in the case last cited:

"Appellate courts have on many occasions condemned the practice of stating objections to testimony in language that is so general or obscure that it may not have served to advise the trial court, or the opposite party, of the precise nature of the objection intended to be urged and to be relied upon. A specification of the particular reasons upon which a party asks the trial court to exclude or to admit certain testimony is essential for three reasons: First, to prevent a violation of the fundamental rule that a litigant must abide in an appel-

late court upon the theory which he has advocated at *nisi prius;* second, to prevent an appellate tribunal from becoming something quite different from a court of review; and, lastly, that the opposing party and the trial court may be fairly advised of the force and nature of the objection intended to be urged, and have a fair opportunity to consider it, and, if need be, obviate it. *Insurance Co. v. Frederick,* 58 Fed. 144; *Turner v. People,* 33 Mich. 363, 382; *Shafer v. Ferguson,* 103 Ind. 90, 2 N. E. 302; *State v. Hope,* 100 Mo. 347, 13 S. W. 490; *Lewis v. Railroad Co.,* 123 N. Y. 496, 501, 26 N. E. 357; *Ward v. Wilms* (Colo. Sup.) 27 Pac. 247; *People v. Nelson,* 85 Cal. 421, 24 Pac. 1006; Elliott, App. Proc. §§ 770, 779. While an objection to testimony for the reason that it is 'incompetent and immaterial' may be adequate in some cases, where the testimony is obviously or clearly inadmissible, yet, as every practitioner knows, it frequently happens that an objection in that form is not sufficient to advise the court or the opposite party of the ground on which the objection is predicated."

While the objection that the "hypothesis stated" is not supported by the evidence may be sufficiently specific in cases where the question embraces a single hypothesis which is clearly without the legitimate meaning of the testimony, yet it frequently happens, as in this case, that an objection in that form is altogether too wanting in precision to direct the mind of either the court or counsel to the vice sought to be eradicated.

The appellant, in support of the sufficiency of his objection, has cited *Frigstad v. Great Northern R. Co.,* 101 Minn. 40, 111 N. W. 838. It may well be doubted whether the objection was sufficient under this authority. We quite agree with the court in the *Frigstad* case that it is the duty of counsel to frame his hypothetical questions with care and accuracy, and that he should not be permitted to throw the burden of correcting its defects upon opposing counsel. The question here objected to was not carefully prepared, and it was not accurate. There is, however, a duty on objecting counsel. He must state his grounds of objection specifically, in order

that the court may rule intelligently, keeping in view the all-essential fact that the promotion of justice is the object of all litigation.

The objection that the damages awarded by the jury and carried into the judgment by the court are excessive is meritorious. The respondent was injured on the 25th day of March, 1909. He returned to his work in less than a month, and continued to work for the appellant in his former position for nearly a year, at an increased wage on account of the raise in wages. He testified, that he resumed work on account of his necessitous circumstances; that he was not well, and that he had a boy to help him the last week he worked for the appellant. He also said, "Well, I am not well;" that his feet and back had troubled him ever since the injury; and that his back hurt him when he worked. After he left the employ of the appellant, he worked as a loader for about a month for another party; then worked as a fisherman, fishing for halibut with a helper, as he says, where he was required to lift heavy fish. In speaking of his present condition he said, "that his back is sore and limber," so that he cannot do any hard work; that his "feet are weak," and that he has not been "well or sound" since he sustained the injury. The day following the injury he called upon a physician at Seattle, who put a few stitches in his forehead where the scalp had been cut. This was practically all the treatment he received prior to the trial. On the 24th day of July, 1909, about four months after he sustained the injury, he applied for membership and benefits in the "Modern Woodmen of America." In his signed application he was asked: "Have you, within the last seven years, been treated by or consulted any person, physician or physicians in regard to personal ailments?" and answered: "No." He was asked: "Have you ever had any local disease, personal injury, or serious illness?" and answered: "No." He was asked: "Are you of sound body, mind, and health, and free from disease or injury?" and answered: "Yes." He was asked: "Has your

weight recently increased . . . or diminished?" and answered: "No." Dr. Teepell, a witness for the respondent, made an X-ray examination of the appellant's spine in May, 1912, and testified that he had a curvature of the spine, and that the eleventh rib had been wrenched from the backbone. He made a radiograph which was put in evidence. He had never seen the respondent before that day. His testimony as to the permanency of the injury was: "Well, my opinion is that it would be more or less permanent;" that the "injury to which he testified was caused by violence," and that it "could very easily cause the symptoms," and that the injury showed by the radiograph would interfere "to a certain extent" with his work, and that "it is rather difficult to say just to what extent." He further said that a curvature of the spine in adults is not infrequent. He also testified that, if the respondent worked the same as he had worked before he met the injury, he would say that the injury was not very serious. He further testified:

"Q. Assuming that the evidence here shows that he called for no medical treatment as to that portion of his body, the ribs, would that indicate to your mind that he was probably not injured there at that time? A. I assumed a few minutes ago that he had been injured in the ribs and treated for such. Q. I am asking you now, assuming that he had not been treated at all and did not ask for any treatment in that line, what would that indicate to your mind? A. That he had not any injury. Q. That is it. Ordinarily speaking then, a person that is suffering from a broken rib or ribs, he feels it at the time? A. Ordinarily, yes sir. Q. That is quite painful; isn't that right? A. Well, no not always. There are many cases where a fractured rib has been known, a patient goes about with some little inconvenience for some length of time. Q. Well, if that is the case, then, doctor, that he does not particularly experience any pain or trouble, isn't that of itself evidence that he was not very severely injured? A. One should say so, yes, sir. Q. Yes. You never saw this man before you took the X-ray? A. No, sir."

Dr. Noble, a witness for the respondent, testified that he examined the respondent during the trial; that from the X-ray examination and from the symptoms he was led to believe that he had a "fractured rib and a twisted spine;" that it was due to some injury; that in his opinion he was not able to perform "the labor he did before;" "I do not think he is capable of doing logging work." He further stated that he had to· rely upon the history of the case as given him by the respondent, and that "we have to rely to a certain extent upon the patient's words." The physicians who testified for the appellant said that there was no indication of a fracture of the rib; that he had a slight curvature of the spine, a condition commonly found in adults, and that there was no evidence of a present disability. A number of the witnesses for the appellant testified that, when the respondent returned to work, he made no complaint, and that he resumed his former position and worked the same as before. The record evidence shows that he resumed work on April 19, six days less than a month after his injury, and that he worked until the 16th day of March, 1910, a period of about eleven months. He was receiving $3.50 per day when he met his injury, and after he returned to his work he was paid at the rate of $4.00 per day while he remained in the employ of the appellant.

The writer has read all of the evidence in the case and we find, that the appellant resumed hard labor within three weeks after he was injured; that he continued in the employ of the appellant for a period of eleven months, working for it when it had work to do; that he received no medical aid, other than to have a few stitches put in his forehead, for a period of three years. This, supplemented by his own solemn written statement when he sought to become a member of the Woodmen's Lodge and to receive its benefits, forces the conclusion that the damages awarded by the jury are so excessive as to conclusively show passion and prejudice. We are always reluctant to interfere with the verdict of the

jury upon questions of fact, but when the facts are as recounted, a considerate regard for our duty requires that we should not permit the verdict to stand. We think a verdict of $2,500 would have been liberal, and that the jury was not warranted in allowing a greater sum.

The case will be remanded, with directions to grant a new trial unless the respondent elects, within thirty days after filing of the remittitur below, to accept a judgment for $2,500.

CROW, C. J., CHADWICK, MOUNT, and PARKER, JJ., concur.