[No. 33776. *En Banc.* June 5, 1958.]

FRANCES M. KRUSE, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*[1]

*Garver & Garver,* for appellant.

*The Attorney General* and *William C. Hallin, Assistant,* for respondent department of labor and industries.

*Holman, Mickelwait, Marion, Black & Perkins* and *Boardman W. Brown,* for respondent Crown Zellerbach Corporation.

PER CURIAM.—Plaintiff, Frances Kruse, on February 25, 1954, made application to the department of labor and industries for a widow's pension. This application was rejected by an order of the supervisor of industrial insurance, and plaintiff appealed to the board of industrial insurance appeals. After a hearing on the application, the board concluded that plaintiff's husband did not sustain a fatal injury within the meaning of the workmen's compensation act and entered an order sustaining the order of the supervisor of industrial insurance. The plaintiff appealed to the superior

[1] Reported in 326 P. (2d) 58.

court. The defendant moved to dismiss the appeal on the ground that the certified record of the board did not contain sufficient evidence to submit the cause to a jury, and the trial court granted the motion. Plaintiff appeals from the judgment of dismissal.

The deceased, Glenn Kruse, was sixty years of age at the time of his death. He had been employed for a period of nearly ten years at the Camas mill of the Crown Zellerbach Corporation as an order assembler. His normal routine duties consisted in assembling orders for bales of paper bags. The weight of these bales ranged from thirty-five to ninety-five pounds.

In filling these orders, Kruse would put a skid board on a lizard (four-wheel dolly) and then pull the lizard through the warehouse to the location of the particular bales ordered. In performing this job, he was required to carry the bales from the storage piles and place them on the skid board, a distance which varied from four to ten feet. The bales were piled from the floor of the warehouse up to six or seven feet high. When an order was filled, Kruse would pull the lizard a distance ranging from twenty-five to one hundred fifty feet, where the power lift operator would take the completed order.

On the evening of February 15, 1954, Kruse was working the swing shift, performing his normal routine duties. He was assisted by a helper that evening. At the lunch period (nine to nine-thirty p. m.), Kruse was in good spirits and made no complaints of ill health to any of his fellow workers.

At eleven o'clock p. m., he and his helper had an order half filled. They were carrying fifty-pound bales about four feet to the skid board. The helper testified that, as Kruse leaned down to pick up a bale, he heard him groan, and when he looked, he saw Kruse sit down on the floor and lean back up against the skid board. When the doctor arrived shortly thereafter, Kruse was dead.

A *post-mortem* examination of the body revealed that the deceased had been suffering from a severe degree of gen-

eralized arteriosclerosis and a severe coronary sclerosis. His death was caused by a coronary thrombosis.

Dr. Woolery, in response to a lengthy hypothetical question involving the evidence in detail, testified that in his opinion the exertion required in the performance of the work was a contributing factor in bringing about Kruse's death.

The sole issue in this action is whether Kruse's death was the result of an industrial injury.

■ In the instant case, the workman was, and had been for the last ten years, engaged in his normal routine duties of assembling orders for bales of paper bags. The exertion of lifting the bales, in itself, does not constitute an injury, as a matter of law.

The legislature has defined the word "injury" in the workmen's compensation act, RCW 51.08.100 [cf. Rem. Rev. Stat. (Sup.), § 7675; Rem. Supp. 1941, § 7679-1], as follows:

" 'Injury' mean a *sudden and tangible happening, of a traumatic nature,* producing an immediate or prompt result, and occurring from without; an occupational disease; and such physical condition as results from either." (Italics ours.)

In order to support a claim under the statute, there must be evidence of a sudden and tangible happening of a traumatic nature. The exertion required in the normal routine duties of a job is not, in itself, an injury within the purview of the statute. There must be some unusual strain placed upon the workman by the work he is called upon to perform which is the cause of his injury or death before compensation can be awarded.

The judgment is affirmed.

FINLEY, ROSELLINI, and FOSTER, JJ. (dissenting)—We dissent for the reasons stated in the dissents in *Windust v. Department of Labor & Industries, ante* p. 33, 323 P. (2d) 241.