[No. 36628.    Department One.    October 10, 1963.]

BEATRICE M. LAWSON, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.**

*Stubbs, Batali, Combs & Small*, for appellant.

*The Attorney General, John C. Martin* and *Stephen M. Reilly, Assistants*, for respondent.

HILL, J.—This is an appeal from a judgment of the Superior Court of Pierce County which dismissed an appeal from an order of the Board of Industrial Insurance Appeals

*Reported in 385 P. (2d) 537.

denying the claimant, Beatrice M. Lawson, a widow's pension.

The sole issue is whether there was sufficient evidence to justify submitting the case to the jury on the issue of whether the death of claimant's husband was attributable to an injury sustained in the course of his employment.

The trial judge held that the evidence (construed most favorably to the claimant) did not establish that her husband was a "workman injured in the course of his employment" under RCW 51.32.010.

The trial judge directed attention to the statutory definition of injury, as given in RCW 51.08.100,

" 'Injury' means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom."

and to our recent cases construing that statute and concluded that, as a matter of law, the evidence did not establish a sudden and tangible happening of a traumatic nature.

On Monday, May 25, 1959, the claimant's husband, hereafter referred to as Mr. Lawson, collapsed while working as a bricklayer and was dead upon arrival at the hospital. The cause of death was a coronary occlusion.

Mr. Lawson had a history of serious heart involvement dating back to 1946. He had been hospitalized as a result of an acute coronary occlusion in 1949 and, again, in 1955. Thereafter he took nitroglycerine pills whenever he had heart or chest pains. The claimant's testimony (concerning the number used) was:

"Well, ordinarily a bottle would last—he would get one hundred pills to the bottle, you get it a little cheaper that way, and they would last a week to ten days."

She also testified that he took Peritrate tablets just before he ate and at bedtime.[1]

---

[1] This was the testimony of the claimant; the testimony of Dr. Brooke was that the Peritrate was reduced to one tablet twice a day. This medication dilated the vessels to the heart, increasing the blood supply.

The testimony of his attending physician was of repeated warnings to Mr. Lawson against the type of work he was doing, and that his response was:

"The only job I know is brick laying. I have to make a living, so therefore I can only do this type of work."

The work on Monday, the day of Mr. Lawson's death, cannot be regarded as peculiarly significant. While Lawson and his fellow workman were under some pressure to complete the job that day, and the bricks with which they were working were of an awkward size and shape (weighing 8 or 9 pounds whereas "regular" brick weigh from 4 to 5 pounds), laying them, under such conditions, was work bricklayers were called upon to perform, and would clearly fall within the ambit of our cases construing the injury statute and holding that the exertion required in the normal routine duties of a job is not, in itself, an injury within the purview of the statute. *Kruse v. Department of Labor & Industries* (1958), 52 Wn. (2d) 453, 455, 326 P. (2d) 58; *Hodgkinson v. Department of Labor & Industries* (1958), 52 Wn. (2d) 500, 326 P. (2d) 1008.

The claimant relies on cases such as *Woods v. Department of Labor & Industries* (1963), 62 Wn. (2d) 389, 393, 382 P. (2d) 1014; *Towne v. Department of Labor & Industries* (1958), 51 Wn. (2d) 644, 646, 320 P. (2d) 1094; and *Porter v. Department of Labor & Industries* (1958), 51 Wn. (2d) 634, 639, 320 P. (2d) 1099, in which we have held that a workman with a pre-existing heart condition may suffer, as the prompt or immediate result of an unusual or extraordinary physical exertion, a disability or death constituting an injury within the purview of the statutory definition.

The evidence the claimant offers in support of her contention: that there had been unusual exertion on the part of her husband resulting in his death, is that on the Thursday and Friday before his death (Monday) he had been working on a concrete-block wall at Fort Lewis. As the wall got to a certain height above the ground, scaffolding had to be used for the placing of the blocks. The concrete blocks being used were 8″ by 16″ by 8″ and each

weighed about 30 pounds. A fellow workman testified that, in addition to the larger size and greater weight, more trowels full of "mud" had to be laid on the cement blocks.

It is obvious that laying concrete blocks is more strenuous than brick and is work that, as the fellow workman testified, "no bricklayer wants to do steady."

The employer testified that half of his work was with concrete blocks; and there is no contention that concrete-block work, or work on a scaffolding, is not customary and routine work for bricklayers.

The claimant's position is not that the concrete-block work on Thursday and Friday, or the work on Monday, constituted an unusual exertion for a bricklayer, but that it was such for her husband. The extent to which he did, or did not do, concrete-block work rests entirely on the testimony of the claimant.

She testified that her husband had been trying to avoid concrete-block work since 1955, and testified that he had turned down block jobs; however, she could remember only one such instance, and that was when he started working after his first heart attack. She testified further that between 1955 and 1959 he had done block work on occasion and "in the last four years, I believe it was about 10 per cent of the time."

Mr. Lawson's own records show that from March, 1957, to the time of his death, his principal employer had been the R. F. Barkshire Company, a masonry contracting company. The president of the company, Fred Barkshire, was called by the claimant. He testified that during the time Mr. Lawson was employed by them 50 per cent of their work was concrete-block construction; that he did not personally know what kind of work Mr. Lawson was doing "because I didn't work with the man on the job. My sons or foreman would be more conversant with those conditions."

If we assume the accuracy of the claimant's testimony— that Mr. Lawson did concrete-block work only 10 per cent of the time—the fact that Mr. Lawson did concrete-block work on the Thursday and Friday before his death does not establish any unusual or extraordinary exertion as in the

*Porter, Towne,* and *Wood* cases, *supra.* Concrete work may have been infrequent for Mr. Lawson, but it was not unusual and it was part of the routine requirements of a bricklayer's job.

We do not reach the claimant's further contention: that if unusual exertion on Thursday and Friday is established, it set up the situation which "triggered" Mr. Lawson's death after 7½ hours of work on Monday and produced "an immediate and prompt result," as required by statute.

The trial court correctly concluded that there was no evidence from which a jury could find an industrial injury as defined by our statute.

The judgment is affirmed.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.