[No. 37661. Department Two. May 19, 1966.]

TERESA MARIE WARNER, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.* *

*Stubbs, Batali, Combs & Small,* by *Hollis B. Small,* for appellant.

*Reported in 414 P.2d 628.

*The Attorney General, Andrew J. Young* and *Thomas O'Malley, Assistants, Schweppe, Reiter, Doolittle & Krug* and *Thomas R. Beierle,* for respondent.

WEAVER, J.—Claimant, the widow of Harry B. Warner, appeals from an order of the superior court dismissing her claim for a pension under our workmen's compensation act. The order of dismissal, entered after a challenge to the sufficiency of the record, is based upon the trial court's conclusion

> that, as a matter of law, the Certified Appeal Board Record herein contains insufficient evidence to establish a prima facie case, or to present a question of fact for a jury.

This is another heart case. The sole issue is whether the record contains substantial evidence of "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without" so that the happening constitutes an injury within the meaning of the workmen's compensation act. RCW 51.08-.100. The evidence and all reasonable inferences therefrom must, of course, be viewed in the light most favorable to claimant. *Davis v. Early Constr. Co.,* 63 Wn.2d 252, 386 P.2d 958 (1963), and cases cited. Our problem is to determine whether the record establishes a prima facie case that decedent suffered some unusual strain which resulted in an injury as defined by the act.

Claimant (appellant) contends that the evidence meets the test illustrated by *Woods v. Department of Labor & Indus.,* 62 Wn.2d 389, 382 P.2d 1014 (1963). In *Woods, supra,* a workman suffered a heart attack while peeling a log. This court held that a prima facie case was established sufficient to present a jury question when the evidence disclosed that the log was twice as hard to peel as any log the workman had peeled before; thus there was an unusual and traumatic happening occurring from without.

The respondent, on the other hand, contends that the instant case is governed by the rationale of *Kruse v. Department of Labor & Indus.,* 52 Wn.2d 453, 326 P.2d 58

(1958), and *Lawson v. Department of Labor & Indus.*, 63 Wn.2d 79, 385 P.2d 537 (1963), in which recoveries for heart attacks were denied. In *Kruse, supra,* decedent was engaged in his normal routine duties of assembling orders for bales of paper bags. In *Lawson, supra,* decedent had been performing his usual, normal routine duties as a bricklayer.

The rules of law identified by these two lines of authority are well defined. The problem is to cast the facts of the instant case upon the appropriate backdrop.

The undisputed facts are these: decedent worked for Pacific Northwest Bell Telephone Company in Tacoma for 33 years. His position was variously described as "station installer," "PBX installer," and "supply man." His usual place of work was in the company warehouse, from which he distributed materials to installers. He did not, however, unload the materials from the trucks delivering to the warehouse. The materials he handled varied in weight from a very few pounds to 300 to 400 pounds; although there is no evidence that he handled any of the heavier materials on the day of his death.

May 27, 1961, a Saturday, decedent started work in the warehouse shortly before 8 a.m. He worked in the warehouse until 11 a.m. when he left to go to the Weyerhaeuser Building to help telephone installers as he had been instructed previously to do by the company dispatcher. After lunch he complained of not feeling well. A few hours later he died of a heart attack.

The rule is well settled in heart cases that unless the attack is precipitated by some unusually strenuous exertion on the part of the workman (and hence "a sudden and tangible happening of a traumatic nature") there is no "injury." Thus, the crux of this case is the nature and extent of the work decedent did in the warehouse between 8 a.m. and 11 a.m. on May 27, 1961. Any conclusion pivots on the testimony of Harry W. Huser, a dispatcher in charge of the installers. Huser was the only witness to testify concerning decedent's activities on the morning in question.

As did the trial judge, we have read and considered Mr. Huser's testimony most carefully. We are impressed with the fact that not once did Mr. Huser state directly, affirmatively and unequivocally that he even *saw* decedent at work between 8 a.m. and 11 a.m. on May 27.

Even by indulging in the inference that Mr. Huser did observe decedent at work on that morning, we nevertheless find nothing in Mr. Huser's testimony to indicate that decedent did any more than his regular warehouse duties during the period in question. Mr. Huser's testimony fails to establish what decedent's total work activity was on either a normal day or the day in question. A prima facie case of an unusual exertion was not made. There simply was no showing of a pronounced deviation from the normal and usual routine which might have required an unusually strenuous effort in addition to that normally required. Thus, our disposition of the case is governed by the rationale of *Lawson, supra.*

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.