[No. 38163. Department Two. July 7, 1966.]

*In the Matter of* ELMO WINSTON TAYLOR, *Deceased.*
JUNE V. TAYLOR, *Appellant,* v. THE DEPARTMENT OF LABOR
AND INDUSTRIES, *Respondent.*\*

*Roger K. Garrison* (of *Boose & Garrison*), for appellant.

*The Attorney General, Kenneth E. Phillipps* and *Floyd V. Smith, Assistants,* for respondent.

HILL, J.—Elmo Winston Taylor died on June 13, 1961, of a heart attack suffered in the course of his employment.

June V. Taylor, appellant herein, filed a claim for widow's pension with the respondent, Department of Labor and Industries. On November 27, 1961, the Supervisor of Industrial Insurance entered an order denying the claim on the basis that there was no "specific instance of unusual exertion" on the part of decedent preceding his attack. She appealed to the Board of Industrial Insurance Appeals.

On November 13, 1963, the supervisor's order was af-

\*Reported in 416 P.2d 455.

firmed by the board. An appeal was then taken to the superior court which, on February 3, 1965, entered a judgment of dismissal ruling that the evidence was insufficient as a matter of law to establish a prima facie case to submit to the jury. This appeal followed.

The sole assignment of error is that the court erred in not submitting the case to the jury.

It is undisputed that decedent died from the effects of a heart attack suffered during the course of his employment. The issue is whether there was any evidence to support a conclusion that the heart attack was caused by unusual strain or exertion other than that normally required in the performance of decedent's duties.

At the time of his death, decedent was employed at a Titan Missile Base. His duties prior to the 6- to 8-week period preceding his death consisted of routine carpentry work performed above ground. He was not required to do any climbing nor was the work particularly strenuous.

Approximately 6 to 8 weeks before his death, decedent was promoted to "carpenter-superintendent." In this capacity he was required to climb in and out of what is referred to as a "missile silo." These silos were described as vertical shafts 40 feet in diameter and extending 157 to 160 feet into the earth. There being no elevators, all workmen, including decedent, had to climb in and out by means of ladders. The evidence indicates that he went in and out of the silos as often as six to twelve times in an 8-hour shift.

About 1 hour after arriving at work on June 13, 1961, decedent suffered a coronary while more than 80 feet down into a missile silo. He made it out by himself and was hospitalized. In the evening of that day, he died.

Beginning with *Windust v. Department of Labor & Indus.*, 52 Wn.2d 33, 323 P.2d 241 (1958), we have consistently held that the exertion required in the normal routine

---

[1]RCW 51.08.100. " 'Injury' means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom."

duties of a job is not an injury within the meaning of RCW 51.08.100.[1] *Lawson v. Department of Labor & Indus.*, 63 Wn.2d 79, 385 P.2d 537 (1963); *Favor v. Department of Labor & Indus.*, 53 Wn.2d 698, 336 P.2d 382 (1959); *Hodgkinson v. Department of Labor & Indus.*, 52 Wn.2d 500, 326 P.2d 1008 (1958); *Kruse v. Department of Labor & Indus.*, 52 Wn.2d 453, 326 P.2d 58 (1958). In other words, for a heart attack to qualify as an injury within the meaning of this section, there must be evidence which will support a conclusion that the attack resulted from a strain or exertion not ordinarily required of the employee in the performance of his duties.

Appellant does not take issue with these cases, but argues that decedent suffered his heart attack while engaged in unusual, nonroutine exertion.

We are unable to agree. The only evidence produced on this issue was that decedent's work as a carpenter-superintendent was "very strenuous" and that the exertion required to climb in and out of the silos, a routine part of his job, required more than usual or ordinary exertion.

Decedent's work was unquestionably difficult and strenuous. However, there is nothing to show that on the day of his death he had engaged in unusual strain or performed duties which were not peculiar to the work he had been performing for the preceding 6 to 8 weeks, or which anyone who held the position would not necessarily have performed.

Appellant relies upon *Woods v. Department of Labor & Indus.*, 62 Wn.2d 389, 382 P.2d 1014 (1963). The claimant in that case suffered a heart attack while peeling a large cedar tree. The evidence permitted an inference that the heart attack was caused by exertion which was unusual and more than ordinarily was required in the performance of his duties. His own testimony was to this effect. We held that the case should go to the jury. This is patently different from the present case.

Appellant contends that decedent had not yet had time to accommodate himself to his new responsibilities and thus was not performing routine duties. This is an

ingenious argument but not convincing after 6 to 8 weeks on a job.

It is one thing to say, as we did in the *Woods* case, *supra,* that a workman who is performing appreciably more strenuous work than that which is ordinarily required of him, has suffered an injury within the meaning of RCW 51.08.100, and quite another to say that a workman who has been on the job for 6 to 8 weeks, and who was not, so far as the record discloses, performing duties different from those he had been doing every day for the last 6 to 8 weeks, has suffered an injury within the meaning of that statute.

A recent "customary and routine work" case supporting our position is *Lawson v. Department of Labor & Indus.,* 63 Wn.2d 79, 385 P.2d 537 (1963). This also was an application for a widow's pension. The claimant's husband suffered a heart attack while working as a bricklayer and was dead upon arrival at the hospital. The evidence offered in support of the contention that there had been unusual exertion on the part of decedent, resulting in his death was as follows: The Thursday and Friday preceding his death (he died on Monday) he had worked on a concrete block wall. It was conceded that laying concrete blocks is more strenuous than laying bricks.

Claimant's testimony was to the effect that decedent disliked the concrete block work and avoided it as much as possible. She testified, however, that in the 4-year period before his death he had done such work on occasion, probably averaging about 10 per cent of his time.

We held that even though the work may have been performed infrequently by decedent, it was, nevertheless, not unusual and was a part of the routine requirements of a bricklayer's job. Consequently, the trial court's judgment that there was no evidence from which a jury could find an industrial injury as defined by RCW 51.08.100 was affirmed.

The trial court in the present case was confronted with a like situation. There being no evidence that decedent was doing anything unusual and not required by the routine

performance of his duties, there was no evidence from which a jury could find an industrial injury as defined by our statute. The judgment of dismissal appealed from is affirmed.

WEAVER, J., and REVELLE, J. Pro Tem., concur.

DONWORTH, J. (concurring)—I concur for the reasons stated in my concurring opinion in *Windust v. Department of Labor & Indus.*, 52 Wn.2d 33, 323 P.2d 241 (1958).

ROSELLINI, C. J. (concurring in the result)—The legislature has met three times since the *Windust* case, 52 Wn.2d 33, 323 P.2d 241 (1958), was decided 8 years ago and has not seen fit to correct the holding that a heart attack occurring on the job is not compensable. In that case I favored applying the doctrine of stare decisis by following the interpretation of the statute which had been accorded by the court for a period of 25 years. To be consistent, I must now favor adhering to the reinterpretation placed upon it in 1958. This is on the assumption that the legislature, by failing to correct that reinterpretation, has indicated that it was of a mind to amend the statute and exclude heart attack victims from the coverage of the act.

However, I cannot see the logic in the exception to the rule which this court has adopted and which the majority opinion recognizes. This is the exception where a heart attack, to be compensable, must result from some "unusual exertion" just prior to the attack. I do not see how unusual exertions are any more "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom" than an ordinary exertion. In either case, the exertion precipitated the attack, and if one should be compensable, the other should be.

The effect of engrafting this exception onto the interpretation which this court adopted in *Windust, supra,* (wrongly, I think), is that a workman's compensation for a heart attack will be granted or withheld depending on the length of time he has been doing a particular job. The majority opinion certainly implies that, if the heart attack

had occurred on the day the deceased first undertook his new duties, the exertion involved in climbing into and out of the silo would have been a "sudden and tangible happening" and his widow would have been entitled to compensation. In other words, every hour and every day that the workman managed to survive on the new job diminished his chances of being compensated, when the exertions of his duties, acting upon his progressively diseased body, resulted in an attack. Such an interpretation of the statute makes the entitlement to compensation depend, not on the nature of the happening, but on the time of its occurrence. I find it hard to believe that the legislature intended such distinctions to be made.

Either the legislature intended that victims of heart attacks, occurring on the job and induced in part by the exertions required of a workman, should be compensated, or it intended that they should not. This court has given the legislature an opportunity to say that it was right in its interpretation of the statute during the 25 years preceding *Windust, supra,* and wrong in the new interpretation placed upon it in that case. Since the legislature has remained silent, I am forced to conclude that recent legislatures, at least, have felt that there should be no such compensation.