[No. 65-40469-1.　Division One.　December 15, 1969.]
Panel 1

ALVA J. MILLER, *Respondent*, v. THE DEPARTMENT OF LABOR
AND INDUSTRIES *et al., Appellants.*

*Slade Gorton, Attorney General,* and *Joe Gordon, Jr., Assistant,* for appellant Department of Labor and Industries.

*Whitmore, Graham & Whitmore* and *E. R. Whitmore, Jr.,* for appellant Western Kraft Corporation.

*Walthew, Warner & Keefe* and *Stephen M. Reilly,* for respondent.

SWANSON, J.—The respondent, Alva J. Miller, a 35-year-old warehouse shipping foreman, claimed he suffered a heart attack while lifting a bale of unassembled cardboard

apple boxes which had fallen from a forklift. The department rejected the claim and said this was part of his usual and routine duties and not an industrial injury as defined by RCW 51.08.100.[1] The Board of Industrial Insurance Appeals sustained the department's rejection of the claim. On appeal to the superior court, the jury's verdict was contrary to the board's finding, and a judgment of reversal was entered.

The employer, Western Kraft Corporation, and the department appeal to this court.

Assignments of error 1 and 4 are directed to the denials of appellants' motions for dismissal, for judgment n.o.v., and for new trial. The department and the employer contend that the record lacks substantial evidence of an industrial injury, and even if there was evidence of exertion causing the heart attack, it was not "unusual exertion" as a matter of law.

In interpreting the evidence in the light most favorable to the claimant, as we must, (*Davis v. Early Constr. Co.*, 63 Wn.2d 252, 386 P.2d 958 (1963); *Dayton v. Department of Labor & Indus.*, 45 Wn.2d 797, 278 P.2d 319 (1954)), the pertinent facts are as follows:

The claimant had been employed at Western Kraft Corporation's Wenatchee warehouse as its shipping foreman for about 7 years at the time of his heart attack. His varied duties included routing trucks, making out billings, seeing that incoming items were properly stored and that outgoing items were properly loaded on the trucks. When rushed or short-handed, claimant did other work such as driving trucks and forklifts. Extra truck and forklift operators were hired during the apple harvest season each fall, and claimant worked 60 to 80-hour weeks, rather than the usual 40. This additional inexperienced help increased the claimant's duties of supervision. In addition, the new forklift operators occasionally spilled bales of cardboard boxes.

---

[1] "51.08.100 'Injury.' 'Injury' means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom."

These boxes were in the form of flat, unassembled pasteboard pieces about 2 feet by 3 feet; these pieces were baled into units weighing about 400 to 550 pounds. Lift trucks carried two units at a time. Sometimes the top unit fell off, and it was necessary to tip or lift the bale onto the pallet so that the lift truck could pick it up again. A lift of from 200 to 250 pounds was required, depending on how the bale had fallen. The claimant frequently assisted in lifting bales, or lifted them himself if he was alone. In the busy season more bales were spilled from the forklifts, and more lifts were necessary. Miller testified regarding his additional work in the fall:

Well, I've got to make sure that they put their things in the right place and I've got to make sure that they load the trucks right or make sure that—what goes on the trucks is right, then when we get a little behind, I've got to run a lift truck and help them, and if they spill a unit or drop units, I've got to help them pick them up or to help them straighten up again.

On Saturday, October 23, 1965, Miller and his fall crew were loading boxes onto trucks for shipment. Numerous bales fell from lift trucks, and claimant assisted in righting several of these units that had toppled. During one of these lifts, Miller felt the onset of tenseness and tiredness in his arms. He continued to work during the balance of the day, even though the feeling persisted. He felt better that evening and returned to work on Sunday. He again experienced pain and went to see his doctor in the evening. The doctor did not suspect a heart attack, but gave medication only. The claimant worked for 3 days more and returned to see his doctor on Wednesday. An electrocardiogram was performed, claimant's condition was diagnosed as a heart attack, and he was hospitalized. It was for this heart attack that the respondent's industrial insurance claim was filed. The claimant's treating physician and the department's examining doctor both testified that the claimant had preexisting arteriosclerosis, but differed as to whether the exertion involved in the lift of the fallen bale made on the previous Saturday precipitated the heart at-

tack. Dr. Proctor, claimant's physician, testified that it was his opinion that the claimant's heart attack began with the lifting of the bale on October 23, 1965, when claimant became weak and tense, and that this lift of the fallen bale precipitated the heart attack.

Do these facts make out a prima facie case of an industrial injury?

■ Appellants do not contend there was insufficient evidence that the exertions caused the heart attack, but rather than the work the claimant did on October 23, 1965, included the same general activity he had engaged in since the beginning of the 1965 harvest season and in previous harvest seasons. If the incident relied upon by claimant is a compensable injury, it must come within the statutory definition of injury. *In re Taylor,* 69 Wn.2d 19, 20, 416 P.2d 455 (1966), contains this statement regarding the proper interpretation of the statute:

> Beginning with *Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 323 P.2d 241 (1958), we have consistently held that the exertion required in the normal routine duties of a job is not an injury within the meaning of RCW 51.08.100. [Citing authorities.] In other words, for a heart attack to qualify as an injury within the meaning of this section, there must be evidence which will support a conclusion that the attack resulted from a strain or exertion not ordinarily required of the employee in the performance of his duties.

(Footnote omitted.)

Respondent seeks to come within the rule announced in *Woods v. Department of Labor & Indus.,* 62 Wn.2d 389, 393, 382 P.2d 1014 (1963), that:

> Since *Windust v. Department of Labor & Industries,* 52 Wn. (2d) 33, 323 P. (2d) 241, it is certain that " . . . a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, . . ." (RCW 51.08.100) does not cover the normal, routine act of an employee. But the *Windust* case did not disturb the rule that
>
> ". . . a workman with a pre-existing heart condition may suffer, as the prompt or immediate result of an

unusual exertion, a death or disability which constitutes an injury and thus entitles him, or his dependents, to compensation. . . ." *Favor v. Department of Labor & Industries*, 53 Wn. (2d) 698, 705, 336 P. (2d) 382.

In the *Woods* case, the claimant presented testimony that not only was peeling trees strenuous exertion, but that peeling the particular tree that caused his heart attack was twice as hard as any he had peeled before. On this evidence the court held that a prima facie case was established.

The appellants argue that the rationale of *Lawson v. Department of Labor & Indus.*, 63 Wn.2d 79, 385 P.2d 537 (1963), is controlling. In this action a bricklayer with preexisting heart disease died while laying concrete blocks. Testimony was offered that laying concrete blocks was more strenuous than laying bricks. The court held that was insufficient evidence from which a jury could find an industrial injury as defined by our statute and said on page 82:

> If we assume the accuracy of the claimant's testimony —that Mr. Lawson did concrete-block work only 10 per cent of the time—the fact that Mr. Lawson did concrete-block work on the Thursday and Friday before his death does not establish any unusual or extraordinary exertion as in the *Porter*, [51 Wn.2d 634, 320 P.2d 1099 (1958)] *Towne*, [51 Wn.2d 644, 320 P.2d 1094 (1958)] and *Wood[s]* cases, *supra*. Concrete work may have been infrequent for Mr. Lawson, but it was not unusual and it was part of the routine requirements of a bricklayer's job.

Appellants also rely on *Chittenden v. Department of Labor & Indus.*, 71 Wn.2d 899, 431 P.2d 622 (1967), where a workman died of a heart attack while operating a brandersander in a plywood mill. The court found no evidence that the deceased had suffered any unusual strain resulting in his death. On page 902 the court explained its decision:

> Appellant places emphasis upon the fact that on the day of his death, Mr. Chittenden was feeding the machine ¾ inch plywood panels, but there was no evidence that this was an unusual or unexpected part of the occupation of brander-sander feeder.

The two lines of authority represented by *Lawson* on one hand, and *Woods* on the other, were identified and placed in perspective in *Warner v. Department of Labor & Indus.*, 68 Wn.2d 607, 414 P.2d 628 (1966). The court said, after discussing *Woods* and *Lawson*, at 609:

> The rules of law identified by these two lines of authority are well defined. The problem is to cast the facts of the instant case upon the appropriate backdrop.
>
> . . .
>
> The rule is well settled in heart cases that unless the attack is precipitated by some unusually strenuous exertion on the part of the workman (and hence "a sudden and tangible happening of a traumatic nature") there is no "injury."

■ The claimant has the burden of producing substantial evidence to make a case for the jury. *Sayler v. Department of Labor & Indus.*, 69 Wn.2d 893, 421 P.2d 362 (1966). In *Omeitt v. Department of Labor & Indus.*, 21 Wn.2d 684, 686, 152 P.2d 973 (1944), the court said:

> If there is substantial evidence supporting the verdict of the jury, as distinguished from a mere scintilla of evidence, the verdict must stand. [Citing authorities.]
>
> By "substantial evidence" is meant that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed. [Citing authorities.]

Is there sufficient evidence of unusual exertion causing the heart attack to justify submission of the case to the jury?

Respondent argues that the record contains testimony that the claimant lifted more than the usual or normal number of bales on the Saturday in question and that this constitutes a sufficient showing of unusual exertion to make a jury question. Let us examine this evidence respondent contends shows unusual exertion.

Even though there is evidence that Miller lifted more than the usual number of bales on the Saturday in question, the record is silent as to when during the day the lift occurred which allegedly precipitated the heart attack. Nor

does the record reveal how many lifts, if any, had preceded it, or how many of the more than usual or normal lifts followed. It must be remembered that claimant continued to work for the balance of the day. In short, there is no testimony that the claimant had lifted more than the normal number of bales on the Saturday in question *before* he felt pain and tenseness in his arms. Further, no testimony indicates that the lift which precipitated the heart attack was any different from any other lift. There was no testimony offered from which we can infer that it was heavier than the ordinary bale or that it had fallen into an unusual position. A close examination of the record reveals no evidence that the lift causing the injury varies in even the slightest degree from any other. It is not disputed that the lifting activity upon which the claimant relies had been routinely and repeatedly performed by him as part of his employment, and specifically so during those 4 months of each year when the business of his employer necessitated greater activity.

In affirming a judgment of dismissal in *Warner v. Department of Labor & Indus.*, 68 Wn.2d 607, 414 P.2d 628 (1966), where a pension claim was based on a heart attack sustained as the result of allegedly strenuous exertion of a warehouse supply man, the court stated at 610:

> Even by indulging in the inference that Mr. Huser did observe decedent at work on that morning, we nevertheless find nothing in Mr. Huser's testimony to indicate that decedent did any more than his regular warehouse duties during the period in question. Mr. Huser's testimony fails to establish what decedent's total work activity was on either a normal day or the day in question. A prima facie case of an unusual exertion was not made. There simply was no showing of a pronounced deviation from the normal and usual routine which might have required an unusually strenuous effort in addition to that normally required. Thus, our disposition of the case is governed by the rationale of *Lawson, supra.*

The evidence upon which respondent relies to show that more than the normal number of lifts were made on that

Saturday, and that therefore unusual exertion was required, is subject to several interpretations. When there is nothing more substantial to proceed upon than two or more conjectural theories, the jury will not be allowed to speculate, and a judgment n.o.v. is proper. *Sortland v. Sandwick,* 63 Wn.2d 207, 386 P.2d 130 (1963); *Grange v. Finlay,* 58 Wn.2d 528, 364 P.2d 234 (1961); *Arnold v. Sanstol,* 43 Wn.2d 94, 260 P.2d 327 (1953).

A careful reading of the record has revealed no substantial evidence that the claimant's heart attack resulted from exertion which was unusual for him and not normally required by his employment.

In view of our disposition of this case, the other assignments of error will not be considered. The judgment of the trial court will be reversed and the cause remanded with direction to dismiss the action.

JAMES, C. J., and FARRIS, J., concur.