[No. 2513–2.   Division Two.   January 26, 1978.]

ROBERTA L. LOUDERBACK, *Appellant,* v. THE DEPART-
MENT OF LABOR AND INDUSTRIES, ET AL,
*Respondents.*

*Richard E. Goodwin* and *Ingram, Zelasko & Goodwin,*
for appellant.

*Slade Gorton, Attorney General, Kirk Mortensen, Assistant, Calhoun Dickinson,* and *Perkins, Coie, Stone, Olsen & Williams,* for respondents.

PETRIE, J.—Roberta L. Louderback appeals from the trial court's denial of her motion for new trial following entry of a judgment on a jury verdict which had sustained an order of the Board of Industrial Insurance Appeals denying her claim for widow's benefits under the workmen's compensation act. We reverse with direction to grant her a new trial reasonably consistent with the trial we directed in our opinion on a prior appeal. *Louderback v. Department of Labor & Indus.,* 14 Wn. App. 931, 547 P.2d 889 (1976).

In *Louderback* I, Mrs. Louderback contended that she should be permitted to present to a jury the question of whether or not her deceased husband suffered a fatal injury in the course of his employment on December 10, 1971, on two theories:

(1) physical strain when he ascended a steep stairway minutes before his death, and (2) emotional strain when he supervised reactivation of a boiler which started malfunctioning approximately 2 hours before his death.

*Louderback v. Department of Labor & Indus., supra* at 932.

In the course of explaining our opinion, we examined in some detail the meaning of the word "happening" in the statutory definition of an injury, RCW 51.08.100, as applied to so-called "heart attack" cases. We noted that Mr. Louderback's physical exertion in ascending the stairway "performed *regularly and routinely* several times a day during a normal day's activity, did not satisfy the minimal proof that a happening occurred." (Italics ours.) *Louderback v. Department of Labor & Indus., supra* at 937.

Nevertheless, we concluded that we could not say that he *routinely and regularly* performed that act under the "highly intense" atmosphere which existed on the date of his death. Accordingly, we directed that she be given the opportunity to present this theory of her case to a jury.

The record before us clearly indicates that she has not yet had that opportunity.

We need only examine a few of the trial court's instructions to the jury to illustrate the point. She proposed an instruction which would have told the jury in part:

> The exertion required in the normal *routine* duties of employment is not an injury within the meaning of this statute.
>
> A workman who suffers a heart attack as a proximate result of unusual exertion, physical and/or mental, during his employment has sustained an industrial injury.

(Italics ours.)

The trial court subverted the impact of that instruction by deleting the word "routine" from the proposed instruction. (Instruction No. 7.) That error was compounded when the court instructed (No. 9A): "An instance of exertion is not 'unusual' simply because it occurs infrequently or only on occasion, so long as it is a usual or expected part of the workman's job."

By these two instructions the jury was told that if a workman is performing the normal duties which are an expected part of his job, he cannot sustain an industrial "injury" to his heart no matter how infrequently or sporadically he performs at that intensity level. The employer and the Department of Labor and Industries contend this is a correct statement of the law, citing *Lawson v. Department of Labor & Indus.*, 63 Wn.2d 79, 385 P.2d 537 (1963) and *Chittenden v. Department of Labor & Indus.*, 71 Wn.2d 899, 431 P.2d 622 (1967). We disagree.

*Chittenden* correctly summarized several prior opinions: *Windust v. Department of Labor & Indus.*, 52 Wn.2d 33, 323 P.2d 241 (1958), *Hodgkinson v. Department of Labor & Indus.*, 52 Wn.2d 500, 326 P.2d 1008 (1958), and *Taylor v. Department of Labor & Indus.*, 69 Wn.2d 19, 416 P.2d 455 (1966), as holdings that there can be no "injury" in the *routine* act of 10 years, 1 1/2 years, and 6 to 8 weeks, respectively. *Chittenden* then proceeded to declare that *Lawson v. Department of Labor & Indus., supra,* held

"there is no 'injury' in the doing of an act for 2 days which, while done infrequently, is not an unusual or unexpected part of the occupation." *Chittenden v. Department of Labor & Indus., supra* at 902.

This dictum in *Chittenden* incorrectly summarized the true holding in *Lawson*. Mr. Lawson collapsed and died of a coronary occlusion on a Monday while working as a bricklayer with bricks weighing 8 to 9 pounds and of an awkward size and shape, whereas, "regular" bricks weigh from 4 to 5 pounds. The court found no evidence of an injury on Monday because

laying them, under such conditions, was work bricklayers were called upon to perform, and would clearly fall within the ambit of our cases construing the injury statute and holding that the exertion required in the *normal routine* duties of a job is not, in itself, an injury within the purview of the statute.

(Italics ours.) *Lawson v. Department of Labor & Indus., supra* at 81.

Furthermore, the *Lawson* court found no injury on the preceding Thursday and Friday, as Mr. Lawson's widow contended, when he had been working on a scaffolding, laying concrete blocks which weighed approximately 30 pounds each. Accepting Mrs. Lawson's testimony that her husband worked with concrete blocks only 10 percent of the time, the court held there was no evidence of an injury because

there is no contention that concrete–block work, or work on a scaffolding, is not customary and *routine* work for bricklayers.

. . .

. . . Concrete work may have been infrequent for Mr. Lawson, but it was not unusual and it was part of the *routine* requirements of a bricklayer's job.

(Italics ours.) *Lawson v. Department of Labor & Indus., supra* at 82, 83.

The force of these cases is that performance of routine tasks normally required of an occupation by one engaged regularly in that occupation cannot, as a matter of law in

this jurisdiction, be considered the "event" which caused or precipitated a so-called "heart attack," even though the individual worker may have performed the specific routine task infrequently. In this context, the word "routine" is used in the sense of "the habitual method of performance of established procedures," or "adherence to a pattern of behavior characterized by mechanical repetition." *Webster's Third New Int'l Dictionary* 1981 (1969). When such an "event" occurs, no amount of medical evidence tending to prove a causal connection between the resulting pathology and the work effort will support a conclusion that an injury occurred in the course of employment. The rule of law may appear arbitrary, but it has become too firmly entrenched in the case law of this jurisdiction to be disputed at this juncture.

■ On the other hand, if medical evidence indicates that an "event" contributed in a material degree to the subsequent pathological condition (*Guiles v. Department of Labor & Indus.*, 13 Wn.2d 605, 126 P.2d 195 (1942); *Towne v. Department of Labor & Indus.*, 51 Wn.2d 644, 320 P.2d 1094 (1958)), the fact finder may determine that an injury occurred in the course of employment when that "event" entailed something more than the performance of routine tasks normally required in a given occupation. That "something more" can be the fact that (1) the worker had not previously been regularly engaged in that specific occupation, *Porter v. Department of Labor & Indus.*, 51 Wn.2d 634, 320 P.2d 1099 (1958); (2) the worker, although previously regularly engaged in that specific occupation, had not previously performed that particular routine task, *Towne v. Department of Labor & Indus., supra;* or (3) the worker, although previously regularly engaged in the specific occupation, performed that particular routine task under conditions which entailed substantially more physical exertion than usual, *Woods v. Department of Labor & Indus.*, 62 Wn.2d 389, 382 P.2d 1014 (1963); *Williams v. Department of Labor & Indus.*, 56 Wn.2d 127, 351 P.2d 414 (1960). In this latter instance, the work effort is not *routine*.

In the case at bench, Mr. Louderback had been regularly employed in the same occupation for a substantial period of time and he had regularly performed the physical act of ascending the steep stairway between the two floors, but there was evidence in the record that shortly before his death he had ascended that stairway while being subjected to substantially more emotional stress than he routinely experienced. That is why we held in the prior appeal of this case that Mrs. Louderback was entitled to present to a jury the contention that her husband "sustained a fatal injury from the combination of the physical and emotional strains experienced during the 2 hours preceding his death." *Louderback v. Department of Labor & Indus., supra* at 932.

Instruction No. 9A told the jury, however, that they could not find Mr. Louderback's exertion "unusual" (and thus that he sustained a fatal "injury") if they determined that at the time of his collapse and death he was doing an expected part of his job. Most certainly, he was doing an expected part of his work, but evidence indicated he was doing a usual or normal task in a manner which entailed substantially more stress than the normal routine required. Under the court's instructions, the jury really had no alternative but to find Mr. Louderback did not suffer a fatal injury. For that reason, the judgment must be reversed and a new trial granted.

Several relatively minor matters should also be discussed. The trial court refused to admit into evidence Mr. Louderback's handwritten work memorandum dated December 9, 1971, which stated in part:

At this time, while it should be in the minds of all of us, the death of Harry Franko in the paper mill last night.

Something should be done about the emergency equipment throughout the mill.

Mrs. Louderback contends this document should have been admitted to demonstrate her husband's state of

mind. The memorandum would demonstrate Mr. Louder-
back's state of mind at the time he wrote it. Whether or not
it reflected his state of mind the next morning presents an
issue of relevancy. Trial courts have considerable discretion
on that issue. We find no error.

Mrs. Louderback also contends the trial court errone-
ously struck some testimony from the board's record, call-
ing the stricken portion "colloquy." Portions of the record
before us are most difficult to follow. The trial court
undoubtedly had difficulty specifically identifying actual
testimony from colloquial asides. In such instances, a trial
court exercises judicial discretion in determining which
portions of the record should be presented to the jury. We
will not disturb those rulings in the absence of manifest
abuse of discretion.

Judgment reversed with direction to grant a new trial.

REED, A.C.J., concurs.

WORSWICK, J.* (concurring specially)—*Louderback v.
Department of Labor & Indus.*, 14 Wn. App. 931, 547 P.2d
889 (1976) (*Louderback* I), became a final opinion before
my participation and is the law of this case. Therefore, I am
compelled by the discipline of the appellate process to con-
cur in the result of the majority opinion particularly
because of Instruction No. 9A. However, I believe that
*Louderback* I should not have been decided as it was.

On the best interpretation of plaintiff's evidence, nothing
more can be shown than that the workman was ascending a
stairway in a normal fashion, as he commonly did, and that
his ascent occurred while a routine "emergency" was taking
place and while a second routine "emergency" was begin-
ning. The routine quality of the emergencies in question is
not lessened by their infrequency. No tangible happening of
any traumatic nature took place, sudden or otherwise
(RCW 51.08.100).

---

*Judge Stanley W. Worswick is serving as a judge pro tempore of the Court of
Appeals pursuant to RCW 2.06.150.

Neither the statute nor the "heart attack" cases analyzed in *Louderback* I and in the present majority opinion support any industrial injury in this case. *Louderback* I, in my judgment, represents an expansion of the definition of industrial injury beyond reasonable limits of elasticity and should be accorded no value as precedent.