[No. 33855. *En Banc.* January 30, 1958.]

MARTHA A. PORTER, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al.*, *Appellants*.[1]

[1]Reported in 320 P. (2d) 1099.

*The Attorney General* and *John J. Quine, Assistant, Holman, Mickelwait, Marion, Black & Perkins* and *Boardman W. Brown,* for appellants.

*Lester Stritmatter (James E. McIver,* of counsel), for respondent.

OTT, J.—Albert E. Porter for two years before his death had been performing the duties of a log marker and brander, as an employee of Rayonier Incorporated. The company's employees had been on strike since April, 1952, and Mr. Porter did not return to his employment until the morning of November 24, 1952. He was then assigned new duties as a "choker setter." He reported to work at 7:30 a. m., and walked from the speeder through a rugged logged-off area for approximately 880 yards to the place where logs had been cut. He carried on the duties of his new assignment for approximately one hour, when he collapsed and died shortly thereafter.

The deceased was a man of slight stature, weighing approximately 129 pounds, and was approximately 5 feet 7 inches in height. He had been in good health until June 16, 1952, at which time he became ill with influenza and a cardiac condition. He was treated by Dr. John C. Korvell, who ordered him to bed. The doctor stated that, with rest, his condition improved, and by June 29th he had recovered. From June 29th until he returned to work, he had engaged in recreational activities and light work around his home.

The work which the decedent performed for Rayonier Incorporated on November 24th, as a choker setter, involved far more physical strain than the light work he had previously been doing as a marker and brander. The new duties required that he carry a choker, weighing 75 to 80 pounds, through brush and over logs, and attach the choker to the fallen logs.

On the morning in question, he was in good spirits and appeared to be in good physical condition. In the one hour of work, he had set ten to twelve chokes. During this time, he had several rest periods while the line pulled the log to

the "cold deck" area. Upon his return with the choker, and prior to attaching it to another log, two of the workmen heard Porter's tin hat hit the ground. They turned and saw him lying face down on the ground. He was removed from the job site, and died in a very short time.

An autopsy was performed by Dr. Kenneth L. Partlow, a pathologist, after the body had been embalmed. This post-mortem examination was observed by Dr. Korvell. The autopsy report was signed by both doctors.

The widow of the decedent petitioned the department of labor and industries for a pension. The supervisor·denied the petition. On appeal, the board of industrial insurance appeals sustained the order of the supervisor. From this order, the widow appealed to the superior court. Upon the trial before the superior court, the jury's verdict reversed the order of the board and allowed the claim. Motions for judgment notwithstanding the verdict and for a new trial were denied. From the judgment entered on the jury's verdict, the department and the employer have appealed.

Appellants' two assignments of error relate to a single question: Was there sufficient evidence to sustain the verdict?

The cause of death is a medical question upon which only a doctor is competent to testify. *Cyr v. Department of Labor & Industries*, 47 Wn. (2d) 92, 286 P. (2d) 1038 (1955).

In the instant case, the jury considered the medical testimony of three doctors relative to the cause of death: Dr. Korvell, who had previously treated the decedent in June, 1952, and who was present as a medical observer at the autopsy; Dr. Partlow, who performed the autopsy and who had never seen the decedent during his lifetime; and Dr. Gale Wilson, who was called as an expert witness and based his opinion upon a hypothetical question.

Dr. Partlow's testimony sustained the position of the appellants. The doctor was of the opinion that there was a thrombus present on November 24, 1952, which had been developing for a period of from four to eight days. It was Dr. Partlow's opinion that the thrombus caused a complete oc-

clusion which resulted in Mr. Porter's death. He testified that death would have resulted irrespective of his employment. When asked if the embalming in any manner affected his conclusions, he answered that he was assuming, for the purposes of his opinion, that there was no circulation past the point of the thrombus.

Dr. Korvell's testimony supported the contention of the respondent. He was of the opinion that the deceased had cardiac symptoms June 16th, from which he had "completely improved" on June 29th. His conclusion, from his observation of the autopsy, was that there had not been a complete occlusion of the blood vessel, but that there was a reduction in the vessel which resulted in an insufficient supply of blood to the heart; that in normal employment the decedent might have lived an indefinite time, and that, because of this infarction of the artery and because of the special strain of the employment, insufficient blood reached the heart, which caused Mr. Porter's death. With reference to causation, the doctor stated:

"I still say in giving my opinion it is the type of work that brought on the attack, extra stresses and strains. If a man had not been working, or had been taking it easy, or if the work had been of an easy nature where he was not being pushed real hard, *I believe he would probably still be working*." (Italics ours.)

Dr. Wilson's testimony also supported respondent's position. He assumed that there had been an occlusion, but testified as to causation as follows:

"Also he had a fresh or recent infarction which was secondary to a recent coronary occlusion which was demonstrated at autopsy and that the exertion, *the effort that he was subjected to on the morning of his death was too much for his heart*, for the condition of the heart which was found at autopsy." (Italics ours.)

Appellants objected to Dr. Wilson's answer, and argue on appeal that the doctor's answer has no probative value for the reason that his opinion was based upon two premises not contained in the hypothetical question, (1) that there

was a second infarction, and (2) that decedent at the time of his death was performing unusually heavy work.

As to (1), the hypothetical question which was propounded to the doctor did not include the assumption of a second infarction. In explaining his answer, he stated that, since the question indicated that there had been a substantial recovery from the June infarction, in order to bring about a complete occlusion on November 24th (as the question assumed), there must have been a further injury to the heart several days before the decedent's death, which, of itself, was not fatal without "very unusual heavy work." The doctor did not disregard or add to the assumptions of the hypothetical question, but reasoned from the assumed premises that a certain condition existed which resulted in decedent's death. We find no merit in appellants' first objection to the answer.

As to (2), to quote the hypothetical question, which covers several pages, would unnecessarily lengthen this opinion. Suffice it to say that the hypothetical question did assume that a man of slight stature was required to lift or drag over rugged terrain a choker weighing seventy-five to eighty pounds. This heavier work was compared with the lighter work he had been doing prior to the day of his death. The hypothetical question did not assume that this was unusually heavy work. However, the doctor, in giving his opinion, assumed the premises of the hypothetical question and concluded therefrom that this type of work for a man of decedent's age, stature, and weight was "very unusual heavy work." Dr. Wilson's answer was not objectionable, as contended by the appellants.

The appellants next contend that the injury (the strain of decedent's employment as a choker setter) was not a sudden and tangible happening of a traumatic nature, within the meaning of RCW 51.08.100 [cf. Rem. Rev. Stat. (Sup.), § 7675, Rem. Supp. 1941, § 7679-1] which provides:

" 'Injury' means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without; an occupational disease; and such physical condition as results from either."

The instant case involves exceptional circumstances, in that unusual strain or exertion was required of the decedent in the performance of his new employment as a "choker setter." Dr. Korvell testified that the decedent would still be working at his customary employment as a "marker and brander." Decedent died within an hour after he commenced to perform the more arduous duties of his new work.

■■ From this evidence and the court's instructions, the jury determined that Mr. Porter suffered an industrial injury, as defined by RCW 51.08.100, *supra*. Where the jury has determined the facts from conflicting evidence, such factual determination will not be disturbed on appeal. *Welliever v. MacNulty*, 50 Wn. (2d) 224, 310 P. (2d) 531 (1957).

■■ No error is assigned to the instructions, and they become the law of the case. *Traverso v. Pupo, ante* p. 149, 316 P. (2d) 462 (1957). It is presumed that the jury applied the law, as given to them by the court, to their factual determination which resulted in the verdict. *State v. Kelsey*, 46 Wn. (2d) 617, 283 P. (2d) 982 (1955).

The judgment is affirmed.

HILL, C. J., MALLERY, DONWORTH, FINLEY, WEAVER, and ROSELLINI, JJ., concur.

FOSTER, J., concurs in the result.

HILL, C. J. (concurring specially)—This case was heard *En Banc* on May 7, 1957. It should be stated that the delay of almost nine months in the filing of the opinion is not chargeable to the author of the opinion, but rather to disagreements within the court. These disagreements have been happily resolved and all are agreed, at least as to the result of the opinion.