[No. 34311.  Department Two.  June 12, 1958.]

JANE WEISSMAN, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 326 P. (2d) 743.

*Walthew, Warner & Keefe* and *Eugene Arron*, for appellant.

*The Attorney General* and *John C. Martin, Assistant*, for respondent.

DONWORTH, J.—This appeal presents a single question of law, *viz*: Does the record contain sufficient evidence to support the verdict of the jury in favor of appellant? The trial court determined this question in the negative and entered

judgment in favor of respondent, notwithstanding the jury verdict. The judgment had the effect of sustaining an order of the board of industrial insurance appeals which had sustained departmental orders denying (1) a workman's claim for aggravation of a compensable industrial injury suffered by him prior to his death; and (2) the claim of his surviving spouse for a widow's pension under the workmen's compensation act.

On October 20, 1950, while in the course of his employment (as an inspector for Seattle City Light), Daniel Weissman fell over some debris and struck his head against a concrete retaining wall. He was unconscious for about thirty to forty minutes. After receiving first-aid attention, he went home. The following morning, he sought medical attention and was hospitalized for three days. He rested at home for several days prior to returning to work on November 4, 1950.

Toward the end of November, 1950, Mr. Weissman accepted a better position as office manager for a construction project. In May, 1951, this work was completed. He then accepted a position as construction superintendent with the 13th naval district.

In May, 1952, Mr. Weissman was hospitalized. He was at that time suffering from extreme head pains and other symptoms which to his physician indicated the possibility of a brain tumor. A craniotomy was performed on May 22nd, for the purpose of relieving intracranial pressure. Thereafter, Mr. Weissman was transferred to a second hospital, where, on June 20th, a second craniotomy was performed. A large tumor was encountered in the central portion of the brain. This tumor proved to be malignant and was medically described as "gliobastoma multiforme." Following treatment, Mr. Weissman was permitted to leave the hospital on June 28th. He was, however, readmitted for further treatment in August. This confinement lasted about ten days. Thereafter he continued to receive radiological therapy as an out-patient until September, 1952.

On April 13, 1953, Mr. Weissman again entered the hos-

pital, where, on May 24th, he expired as a result of the tumor.

After his initial hospitalization in 1952, the symptoms which indicated Mr. Weissman's fatal illness became progressively more pronounced. He suffered from constant headaches, which increased in intensity; his speech became faltering; his appetite was poor; he lost weight and became irritable. He appeared to lack co-ordination of his limbs. Mr. Weissman was able to work only intermittently between September, 1952, and the time of his death.

The sole question submitted to the jury was whether the traumatic injury of October 20, 1950, either caused or hastened the death of Mr. Weissman. The medical evidence adduced by respondent consisted of the testimony of three neurosurgeons, each of whom had examined and/or treated Mr. Weissman at various times between October 20, 1950, and the time of his death, and one pathologist, who had never seen Mr. Wiessman. All were of the opinion that there was no causal connection between the traumatic injury sustained in October, 1950, and his death in May, 1953, which resulted from the malignant tumor. In opposition to this medical testimony, appellant's evidence consisted of the testimony of two physicians—one, a pathologist, and the other, a general practitioner. Neither had seen Mr. Weissman during his lifetime. In answer to identical hypothetical questions propounded to them, these physicians expressed the opinion that a causal connection did exist between the death of Mr. Weissman and his antecedent traumatic injury.

The testimony of these physicians, taken at hearings held by the board of industrial insurance appeals, was read to the jury. They accepted the medical opinions expressed by appellant's medical witnesses as being correct, and returned a verdict in her favor.

■ Appellant's two assignments of error relate to the single question: Was the trial court correct in entering judgment for respondent n.o.v.? In determining this question, our inquiry is limited solely to whether there is sub-

stantial evidence to support the verdict. *Cline v. Department of Labor & Industries*, 50 Wn. (2d) 614, 313 P. (2d) 687 (1957). Furthermore, we must consider all evidence and all inferences which may be reasonably drawn therefrom in the light most favorable to appellant. *Halder v. Department of Labor & Industries*, 44 Wn. (2d) 537, 268 P. (2d) 1020 (1954).

The litigants agree that the judgment entered n.o.v. was based upon the trial court's conclusion that the evidence was insufficient to support certain assumptions of fact contained in the hypothetical questions propounded to appellant's medical witnesses and upon which their opinions were based. Respondent made specific objections to these questions on the ground that they were not supported by evidence in the case. Our inquiry, then, is addressed to the sufficiency of the evidence supporting the assumptions of fact so proposed.

With reference to Mr. Weissman, appellant's medical witnesses were asked to assume, in part:

". . . that from the time of the trauma [October 20, 1950] as aforementioned up until the time he became employed by the 13th Naval District [May, 1951], he had [1] loss of appetite, [2] loss of weight, [3] had constant headaches and [4] complained of difficulty with his eyes; that during the same period he [5] became nervous and impatient; . . ."

Concerning Mr. Weissman's condition immediately after returning to his home on the day he sustained his traumatic injury (October 20, 1950) and prior to his admission to the hospital the following day, Mrs. Weissman testified:

"He complained of constant severe headaches with increased pain when there was any slight jarring, someone walking across the floor, or if he blew his nose or coughed, or even any movement of his head at times."

The personal history contained in Mr. Weissman's hospital admission record, dated May 21, 1952, reflects objective and subjective symptoms related by him to his attending physician at that time. This exhibit recites, in part:

"Pt. was injured in a fall on his head 1½ yrs. ago. Had X-Rays at that time which were apparently normal. Since that time has been having headaches which have been increasing in severity. . . ."

Aside from his complaints of October 20, 1950, we think that it would be unreasonable to infer from the above quoted hospital record that Mr. Weissman's headaches were *constant*, rather than *infrequent*.

Dr. S. N. Berens (one of the neurosurgeons who testified on behalf of respondent) examined Mr. Weissman on September 11, 1952. The history which he then obtained was "the result of examination of the Department's [respondent's] file and also consultation with the patient's wife and what little information the patient could give himself." On direct examination, with reference to Mr. Weissman's symptoms immediately after his traumatic injury in October, 1950, Dr. Berens testified as follows:

"Q. Did Mrs. Weissman make any statements to you as to whether Mr. Weissman had the usual or unusual or any headaches whatsoever during the 5-day period in the hospital? A. No. If so I didn't record it and I don't know. Q. Did you get any more history from Mrs. Weissman? A. She stated that during the interval from the time he left the hospital until some time in January or February he had no unusual headaches but about in January or February the headaches which she had observed from time to time became a matter of concern and while he attributed these to eye strain he didn't do much about them until about April or the first part of May. Q. Of what year, Doctor, is that? A. Well, of 1952."

This testimony tends to negate the presence of *constant* headaches prior to January or February of 1952.

Concerning observable changes in Mr. Weissman's appetite between October, 1950, and May, 1951, Mrs. Weissman testified:

"He wasn't eating too well . . . He didn't eat as much as he ordinarily did. He was picky, seemed to lack interest in food and *became a little more irritable*." (Italics ours.)

While this testimony establishes the fact that Mr. Weissman's appetite diminished somewhat, it does not necessarily support the hypothesized facts that "he had loss of weight" and became "nervous and impatient."

Nor do we think that it can be reasonably inferred from the fact that Mr. Weissman attributed his headaches to "eye strain" that he had any "difficulty" with his eyes other than that which he assumed to be due to overwork at the drafting board.

■ In summary, it is our opinion, based upon a careful review of the evidence (as shown in the nearly six hundred pages of the board record), that the several material facts assumed in the questions propounded to appellant's medical witnesses represented exaggerated statements of fact not shown by any evidence. Particularly is this so in connection with the assumptions of fact that Mr. Weissman had "*constant* headaches" and "*difficulty* with his eyes" during the important seven-month period immediately following his traumatic injury.

■ Appellant contends that, even if the hypothetical questions were defective with respect to Mr. Weissman's complaints of difficulty with his eyes, then such defect is immaterial. A reading of the record convinces us otherwise. In support of this argument, appellant cites *Abbott v. Department of Labor & Industries*, 49 Wn. (2d) 774, 307 P. (2d) 254 (1957), wherein a hypothetical question posed to an expert medical witness contained an assumption of fact (not supported by the evidence) that the workman had sustained a brain concussion as a result of an injury to his nose. The expert witness there stated that his conclusion would be the same even if there had been no concussion. But there is no such testimony in the present case.

■ Hypothetical questions must be framed to fairly come within the scope of the testimony. *Knutson v. Moe Brothers*, 72 Wash. 290, 130 Pac. 347 (1913). In *Salesky v. Department of Labor & Industries*, 42 Wn. (2d) 483, 255 P. (2d) 896 (1953), we said:

"An answer to a hypothetical question is admissible only

when there is testimony in the record as to the hypothesis upon which the question is based."

Here, the hypothesis upon which the hypothetical question was based is appellant's exaggerated version of the testimony in the record. Respondent's objections to the answers of appellant's medical witnesses, based upon the hypothetical questions propounded to them, should have been sustained.

Appellant contends in her reply brief that "Whether or not the hypothetical question is supported by the testimony in the record is for the jury to determine."

In *Berndt v. Department of Labor & Industries*, 44 Wn. (2d) 138, 265 P. (2d) 1037 (1954), we held:

"When an expert who knows nothing about an individual except what is included in a hypothetical question assumes, as the basis for his opinion, the existence of certain conditions not included in that question and not necessarily inferable therefrom, and *not established by the evidence,* he destroys the validity of his answer." (Italics ours.)

Since the assumption of facts not established by the evidence destroys the probative value of the expert's opinion, the opinion is irrelevant and, therefore, objectionable. But it is within the province of the trial court, and not the jury, to rule on the relevancy of evidence.

Contrary to appellant's contention, the cross-examination of her expert witnesses upon these points would not waive respondent's objections. See *Kiehn v. Sprague School Dist. No. 8*, 152 Wash. Dec. 136, 324 P. (2d) 446 (1958).

In the absence of the opinions expressed by appellant's medical witnesses, the record, when considered as a whole, fails to establish a *prima facie* case. The trial court, therefore, did not err in entering judgment n.o.v. dismissing this action.

Judgment affirmed.

HILL, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.

---

October 17, 1958. Petition for rehearing denied.