[No. 37168.    Department Two.    October 29, 1964.]

THE BOEING COMPANY, *Appellant,* v. DOROTHY R. FINE *et al.,*
*Respondents.**

*Holman, Marion, Black, Perkins & Coie, Fred S. Merritt,*
and *Richard R. Albrecht,* for appellant.

*The Attorney General, William J. Van Natter* and *John J.*
*Quine, Assistants,* for respondent Department of Labor and
Industries.

*Reported in 396.P. (2d) 145.

FINLEY, J.—The respondent, Dorothy Fine, was granted compensation under the Industrial Insurance Act for a low back injury she sustained in the course of her employment as a clerk-typist for the Boeing Company, appellant herein. The record shows that the claimant, Dorothy Fine, was in the process of bending over and reaching for a file box when her telephone rang. She performed or went through a twisting movement to reach the telephone, while leaning in the opposite direction. As she did so, she experienced an immediate sharp pain in the small of her back. The low back injury resulting from her twisting motion was so serious that she had to be taken to the hospital in an ambulance.

It is not disputed that the bodily movements described above, performed while at work in the scope of employment, were a proximate cause of the low back injury for which the claimant now seeks compensation. The only dispute is whether the particular bodily failure, caused only by such external force as was generated by movements in response to the normal work routine, constituted an "injury" within the contemplation of the Industrial Insurance Act. The claim was allowed by the Supervisor of Industrial Insurance, and affirmed by the Board of Industrial Insurance Appeals. On appeal to the superior court, the award in favor of the claimant was again upheld. Now, in an appeal here, the appellant asks this court to restrict the definition and application of "injury" to preclude the claim of the respondent for benefits under the act, which in pertinent part reads:

" 'Injury' means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom. . . ." RCW 51.08.100.

In this state the statutory definition of "injury" is met when the bodily movements required by the job in the course of employment have produced a sudden and immediate back injury. *Dayton v. Department of Labor & Industries,* 45 Wn. (2d) 797, 278 P. (2d) 319 (1954). Indeed, in such cases the inquiry has usually been directed not to whether there has been an "injury," but to whether the bodily failure, if sudden and immediate, was proximately

caused by an exertion required by or expended for the job. *Dayton, supra.* The requirements of a "traumatic" happening, and one "occurring from without," are satisfied by the sudden strain, originating outside the body in answer to the demands of the job, which, when applied internally, proximately caused the bodily failure.

The appellant has grounded this appeal on the argument that the partial redefinition of the term "injury" in *Windust v. Department of Labor & Industries,* 52 Wn. (2d) 33, 323 P. (2d) 241 (1958), affects the above conclusion. In *Windust,* the majority held that a heart attack occurring on the job was not an "injury" within the meaning of the Industrial Insurance Act, as the requirement of a "sudden and tangible happening" was not met by a routine act not involving unusual exertion on the part of the employee. The decision established that the disability or death of a workman involving a heart condition will not constitute an injury within the purview of the statutory definition unless it is the consequence of an immediate or prompt result of an unusual or extraordinary physical exertion on the part of that employee. *Lawson v. Department of Labor & Industries,* 63 Wn. (2d) 79, 385 P. (2d) 537 (1963); *Woods v. Department of Labor & Industries,* 62 Wn. (2d) 389, 382 P. (2d) 1014 (1963); *Porter v. Department of Labor & Industries,* 51 Wn. (2d) 634, 320 P. (2d) 1099 (1958).

■ It is the position of the appellant that there is no significant difference, legally, between heart attacks and back injuries, and that, therefore, a back injury can be an "injury" within the purview of the act, only where the element of unusual or extraordinary physical exertion is shown. We do not agree. The fundamental differences between heart attacks and back injuries are such as to render the "unusual exertion" test irrelevant when transplanted into the area of the law dealing with injuries to the skeletal structure of the body, in particular the back. A heart attack, under currently persuasive medical theory, is largely related to long-term disease, and may be unrelated to the particular employment hazard to which the work may be subjected. Thus, the thought that a heart attack suffered during accus-

tomed exertion is really happenstance as to time and place is exemplified in the approach of the majority in *Windust.* Contrast this to injuries of the back. It is quite possible that a slight or usual strain applied at an unusually different angle could, through the forces of levers, et cetera, overpower and injure a normal back.[1] Thus, the *unusual strain* requirement of the *Windust* case does not apply to injuries to mechanical structures to which the angle of application of the force may be vastly more important than the general level of strain.

---

[1]Here, again, the mysteries of physical failures of the human body overshadow the concrete knowledge of causation. Mrs. Fine's exact injury was diagnosed as a herniated disc. Medical science has long recognized that these injuries often result from severe trauma, but the treatises are full of similar injuries resulting from mild trauma.

" . . . Rupture of an intervertebral disc is almost always initiated by trauma, but by trauma, as we use it here, we mean it in its broadest sense. The stress and strain of daily living reflected to this structure cause it to undergo these changes. The constant wear and tear of bending, lifting, and other movements of the spine are exciting causes in most disruptions of the discs. There certainly are predisposing factors such as developmental defects, infections, and degenerative processes associated with disease, *but the trauma of everyday life is recognized as the chief cause of most disruptions, no matter at what moment* the particular rupture occurs. . . . " Lawyers Medical Cyclopedia, Vol. 1: § 7.6, p. 345 (1953).

It is interesting to note that experiments have shown that the intervertebral disc can withstand between 1,000 and 1,300 pounds of pressure before failure when it is compressed as if carrying a load with a straight back; but the disc will fail at far less pressure when the specimen is being both turned and stressed. Brown, et al.: *Some Mechanical Tests on the Lumbosacral Spine with Particular Reference to the Intervertebral Discs,* 39 Jour. Bone & Joint Surg. 1135, 1145, 1157 (1957). This phenomenon is well recognized.

"An equally common cause of intervertebral disc injury is that of lifting with the trunk in partial rotation. Obviously torsion subjects the different portions of the lower lumbar intervertebral discs to unequal pressures and stresses. Occasionally the act of lifting with the trunk in partial rotation subjects one part of a lumbar intervertebral disc to such extreme force that it disintegrates. Laborers in industry are well aware of this fact and attempt to avoid any strenuous motions while their trunks are in partial rotation. . . . " Gelfland: The Low Back, § 11.12, p. 482 (1962).

We note that Mrs. Fine was not lifting anything, but that she was bending and extending forward, only to make a violent lateral movement, which, under the physics of the spine and the intervertebral discs, resulted in excess pressure to the involved disc.

■ Likewise, the plaintiff is only required to make a prima facie showing that some unusual or awkward angle, required by the conditions or demands of the job, caused the injury to the mechanical structure. To require more than this would place an insurmountable burden of proof on the workman.

■ An unthinking or automatic application of the heart rule to the mechanical structures of the body would be unreasonable, illogical, and unwise. Industry must bear the expense of injuries which are caused by the application of force to a mechanical bodily structure. This is the basic policy of the Workmen's Compensation Act. Restricting the coverage of the act, which would follow if the argument of the appellant is accepted, should be, and we think is more wisely left for legislative study, evaluation and determination.

The judgment is affirmed.

OTT, C. J., WEAVER and HAMILTON, JJ., concur.

DONWORTH, J., concurs in the result.