4 Wn. App. 430 (1971)
481 P.2d 577
VAUPELL INDUSTRIAL PLASTICS, INC., Appellant,
v.
THE DEPARTMENT OF LABOR AND INDUSTRIES et al., Respondents.
No. 445-1.
The Court of Appeals of Washington, Division One  Panel 1.
March 8, 1971.
Jones, Grey, Bayley & Olsen and Victor Van Valin, for appellant.
Slade Gorton, Attorney General, and Kirk I. Mortensen, Assistant, for respondent Department of Labor and Industries.
Bassett, Donaldson & Hafer, M. Lee Price, and Richard D. Hicks, for respondent Cowardin.
HOROWITZ, C.J.
Claimant, Nelga P. Cowardin, filed a claim for industrial injury with the Department of Labor and Industries of the State of Washington. The department rejected her claim. She appealed to the Board of Industrial Insurance Appeals, which after hearing, reversed the department and entered findings and conclusions and decision in claimant's favor. Claimant's employer, Vaupell Industrial Plastics, Inc., appealed to the superior court. The court heard the matter de novo on the board record, affirmed the board's decision, and entered findings, conclusions and judgment in favor of claimant. The employer appeals.
The evidence supporting the findings shows the following: Claimant on April 26, 1966, while on her employer's premises, sustained an injury to her back while pulling a basket of plastic parts, weighing approximately 6 pounds, out of a so-called "cooker" with a pulley device. Claimant testified that normally, she pulled the basket frontwards, but this time she pulled the basket over on the side and when she did, she felt a twinge or a pulled muscle. Commencing *432 about May 1, 1966, claimant experienced pain in the right hip and leg which was diagnosed as being caused by a protruding lumbar disc at the lumbar four or five level.
Claimant on July 27, 1966, made a claim under the Industrial Insurance Act, reporting that she was injured in April 1966 in the course of employment and that the injury caused the above mentioned protruding lumbar disc. The department rejected her claim on the ground that there was no proof of the specific injury at a definite time and place, and that claimant's condition was not the result of the alleged injury.
Prior to April 1966, claimant had experienced back problems requiring chiropractic treatment. In the interval of 1960 to April, 1966 she received repeated treatment for symptoms in her upper back and also received treatment in the low back related to menopause. In June, 1965 she fell injuring her face, legs and arms and right lumbar region and thereafter received a chiropractic treatment to her entire back. However, there was no evidence  only suspicion at best  that the disabilities caused by the April 26, 1966 injury had been caused by claimant's prior back problems or that she had sustained any injury at the place on her back where she had felt what she first thought was a muscle pull. The sole evidence showing a causal connection between the so-called muscle pull incident and the disabilities of which claimant complained was the testimony of Dr. St. Elmo Newton, her medical expert, in response to a hypothetical question admitted in evidence over the objection of employer and the department. The court found inter alia:
On April 26, 1966, the claimant sustained an injury to her low back which she thought was a muscle pull, but which was ultimately diagnosed as protruding lumbar disc at the Lumbar 4 or Lumbar 5 level, when the claimant pulled a basket of plastic parts weighing approximately six (6) pounds out of a cooker with a pulley device and, while bent forward, pushed the basket over to one side *433 of the cooker, the operation being performed in an awkward position with the twisting motion.
The court concluded:
The appellant has not carried the burden of proof in that they have not established that the Findings and decision of the Board are incorrect by preponderance of the evidence.
Appellant challenges the quoted finding and conclusion on the ground that the challenged finding lacks evidentiary support.
[1] Appellant first contends that there was not sufficient evidence to establish "a sudden and tangible happening, of a traumatic nature" within the meaning of RCW 51.08.100. That statute provides:
"Injury" means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom.
We disagree. In Boeing Co. v. Fine, 65 Wn.2d 169, 173, 396 P.2d 145 (1964), it was held that the plaintiff is only required to show prima facie that "some unusual or awkward angle, required by the condition or demands of the job, caused injury to the mechanical structure." It is undisputed that claimant felt what at that time she thought to be a pulled muscle when she was raising the basket out of the cooker while in an awkward position. This evidence is sufficient to make a prima facie showing of the required traumatic happening.
Appellant, however, primarily contends that the only evidence which establishes the muscle pull incident as a proximate cause of her protruding disc was the testimony of Dr. Newton, which appellant claims was inadmissible because made in response to an improperly drawn hypothetical question.[1]
*434 Without the hypothetical question, the challenged finding is without evidentiary support; and, since the finding is a necessary prerequisite to liability, we would then be required to reverse the judgment entered below. Berndt v. Department of Labor & Indus., 44 Wn.2d 138, 265 P.2d 1037 (1954); Weissman v. Department of Labor & Indus., 52 Wn.2d 477, 326 P.2d 743 (1958); Salesky v. Department of Labor & Indus., 43 Wn.2d 483, 255 P.2d 896 (1953).
*435 [2-5] Certain principles pertinent here are well established. Medical testimony is required to establish a causal relationship between the claimant's injury and the disability for which benefits are sought. Cyr v. Department of Labor & Indus., 47 Wn.2d 92, 286 P.2d 1038 (1955); Sawyer v. Department of Labor & Indus., 48 Wn.2d 761, 296 P.2d 706 (1956); Stampas v. Department of Labor & Indus., 38 Wn.2d 48, 227 P.2d 739 (1951). A hypothetical question propounded to the medical expert on claimant's behalf on the issue of proximate cause must include any undisputed fact which is material in the formulation of a fair, intelligent and sound opinion. If it fails to do so, the hypothetical question is objectionable and the validity of the medical expert's answer is destroyed. Berndt v. Department of Labor & Indus., supra. However, it is not necessary that a hypothetical question embody only undisputed facts. If evidence concerning facts is disputed, then the claimant cannot know what facts will be accepted by the trier of the facts. Accordingly, a claimant, in propounding his hypothetical question, may include disputed facts and need only include those which support the claimant's theory of the case. Opposing counsel may then cross-examine the expert and ask him whether his opinion would change if other facts were taken into consideration. Spinelli v. Economy Stations, Inc., 71 Wn.2d 503, 429 P.2d 240 (1967); Wharton v. Department of Labor & Indus., 61 Wn.2d 286, 378 P.2d 290 (1963); see 2 J. Wigmore, Evidence § 682 (3d ed. 1940). Whether a fact is disputed or undisputed, and whether the fact is material to the formulation of a fair, intelligent and sound opinion, is a preliminary question of admissibility for the court to rule upon. The materiality of the undisputed fact must be established by or be apparent from evidence such as the medical expert's own testimony (as in Berndt v. Department of Labor & Indus., supra), unless it is a matter of which the court can take judicial notice. As Wigmore puts it with respect to a jury trial:
The trial judge should be given discretion to determine how far the counsel can and must properly limit his questions, *436 and how far the jury may be trusted, with the aid of argument, to discover the conditional nature of the opinion.
2 J. Wigmore, Evidence § 682, at 810 (3d ed. 1940).
The employer, aided by the department, advances several reasons to support the objection to the hypothetical question. It is claimed that the question assumes, without evidentiary support in the record, that claimant felt a twinge of pain in the lumbar area of the back rather than in her mid-back, and that she felt a twinge of pain in her back and right hip and leg at the time of the injury. The record shows, however, that there is evidentiary support for the facts assumed.
The evidence as to the precise location of the injury is somewhat confusing. Claimant on one occasion, in describing the area in her back where the injury occurred, testified "I don't know what part you would call it." Claimant, at other times, described the injury as occurring in her mid-back. In still other testimony she did not use the term mid-back to define anything higher than her beltline, i.e., her low back. Claimant, however, while testifying in the presence of counsel for the parties, physically pointed out to the trial examiner the area of her back where the assumed muscle pull occurred. The record does not show the precise area that she physically designated. However, the board adopted the examiner's finding that "[T]he claimant sustained an injury to her low back which was ultimately diagnosed as a protruding lumbar disc at the [lumbar four or lumbar five] level ..." The evidence is sufficient, in our opinion, to support the assumption in the hypothetical question that the injury occurred in her low back.
[6] The assumption that the claimant felt a twinge of pain in her low back and right hip and leg at substantially the same time also finds support in the record. The precise date of the injury is not clear. At one point, however, claimant testified that she started her work described as "cooking" about mid-April and that she sustained her injury "about a couple of weeks" thereafter. The board found that *437 the injury occurred on April 26, 1966, which was "about a couple of weeks" after mid-April. It should be remembered that the burden of proof in the trial below was upon the appealing defendant to overcome the prima facie effect of the board's findings. Gaines v. Department of Labor & Indus., 1 Wn. App. 547, 463 P.2d 269 (1969). The trial court expressly concluded that the appellant "has not carried the burden of proof ... that the findings and decision of the Board are incorrect by a preponderance of evidence." Any uncertainty in the evidence as to the date of the occurrence was therefore an issue that the court could have resolved and did resolve in favor of claimant. If the injury occurred on April 26, 1966 and the pain in her leg and right hip was first felt "approximately May 1st of 1966", we cannot say that the assumptions 7 and 8 contained in the hypothetical question were improper. Certainly the time of the injury and the time of sensing the pain in her leg and right hip was a disputed fact. Claimant, in the question propounded, had the right to assume her version of the evidence in conformity with her theory of the case.
Appellant employer also contends that the hypothetical question is confusing and conjectural because the word "job" referred to in assumption 12 was made without reference to any specific job conduct of the claimant. However, the word "job" in assumption 12 is explained in assumptions 10 and 11. The employer on cross-examination was entitled to inquire of the doctor what he understood by the reference to "job" in assumption 12 so that if the doctor was confused by the reference, the confusion could have been dispelled. Spinelli v. Economy Stations, Inc., supra; Wharton v. Department of Labor & Indus., supra. The hypothetical question being proper, the answer had evidentiary value to show that claimant sustained an injury within the meaning of RCW 51.08.100.
It is further contended that the hypothetical question omits material facts relating to claimant's prior back troubles. It is claimed that assumption 6 in the hypothetical *438 minimizes rather than fairly states the evidence. Thus, employer calls attention to the chiropractor's testimony concerning the existence of extensive problems with her low back over a prolonged period of time; to evidence that in January 1962 claimant's chiropractor adjusted her back when she complained of pain in her low back lumbar area; that in June 1965 she had a cut over her left eyebrow, a stiff neck and a "bruised right lumbar" sustained as the result of a fall; that in November 1965 she complained of pain in her "mid and low back" which started to bother her after "lifting something." However, claimant denied that she had ever sustained any injury to the part of her back in which she felt the twinge of pain in the April incident here involved. Furthermore, there was no evidence that prior to the injury she experienced the pain which she began to feel about May 1, 1966. On claimant's theory of the case, the prior back troubles had nothing to do with the April 26, 1966 injury and disability following. The claimant, in propounding the hypothetical question, was entitled to include the disputed facts sustaining claimant's version of the case. Opposing counsel, on cross-examination, could then inquire of Dr. Newton whether his opinion would be different if the hypothetical question included other facts deemed by opposing counsel to be material. See Spinelli v. Economy Stations, Inc., supra; Wharton v. Department of Labor & Indus., supra; New Empire Ins. Co. v. Taylor, 235 Ark. 758, 362 S.W.2d 4 (1962).
[7] Claimant in relating the history of her injury to the doctor, told him, according to his notes, that "pain began in right hip and right leg while out lifting boxes at work." In reaching our conclusions here, we have not relied upon this testimony as evidence of the facts recited. Floyd v. Department of Labor & Indus., 68 Wn.2d 938, 416 P.2d 355 (1966); Smith v. Ernst Hardware Co., 61 Wn.2d 75, 377 P.2d 258 (1962).
The judgment is affirmed.
UTTER and WILLIAMS, JJ., concur.
NOTES
[1] "Doctor, [1] assuming a 50-year old woman who assume she comes to you with a [2] complaint of pain in the right hip and leg who [3] related the history of this problem for approximately six weeks prior to her initial visit to you [on June 14, 1966] and [4] assuming that your diagnosis is that of a probable protruding lumbar intervertebral disc. And further assume that she has [5] a history of back problem in where she describes as between the shoulder blades and perhaps into the cervical spine and also assuming that she relates a [6] previous problem or perhaps two previous problems in the low back area. One, which she relates to a change of life problem. The other which she relates to a fall which she suffered in approximately November of 1965 for which she received an adjustment to her entire back from a chiropractor. And assume that [7] she related an incident during her employment approximately again six weeks prior to the time in which she visited you [on June 14, 1966], in which she felt a twinge of pain in the lumbar area of her back while raising a pulley, which was pulling up a tray of plastic parts which at the most probably weighed seven to eight pounds. And further assume that she related [8] very little difficulty, if any, perhaps only a slight backache from then until approximately May 1st of 1966, at which time she relates the pain in the leg and hip which she has initially come to you with. And please assume further that [9] her work consists largely of sitting in a chair at a desk where plastic parts are brought to her that she cleans out with a knife to clean off the excess plastic, which is then taken away by someone else, and she does not lift or transfer those boxes.

"Assuming further that [10] she has an additional job which is known as `cooking', which consists of raising a basket of plastic items; the whole around amount which weighs probably no more than seven to eight pounds and it is, in fact, considered light work.
"Assuming further [11] that these plastic parts are then dumped on an absorbent blotter to dry and then placed in boxes which are approximately twenty-six inches by about twenty-six inches and again, the total weight is probably no more than seven to ten pounds.
"And assuming further that she relates that [12] at the time of the incident where she felt the twinge of pain in her back she stated that she was doing the job a little differently, in that she was pulling and twisting at the same time because she did not want the water to go into another part of the tank. And assuming further that while [13] the job was essentially one of light work that it does involve bending and reaching and on occasions, awkward positions." (Bracketed material added.)
Before the doctor was called upon to answer the foregoing question, it was modified in certain respects not here material.