[No. 47052-9.   En Banc.   May 14, 1981.]

LONGVIEW FIBRE COMPANY, *Respondent,* v. LEONARD WEIMER, *Petitioner.*

*Kenneth E. Phillipps,* for petitioner.

*Studley, Purcell, Spencer, Guinn & Roesch,* by *Wayne D. Purcell,* for respondent.

DIMMICK, J.—At issue is whether a back condition (ruptured lumbosacral disk) precipitated by the normal bodily movement of bending over to pick up an object during the course of employment constitutes an "injury" within the meaning of the industrial insurance act. We hold that it does and reverse the decision of the Court of Appeals.

Leonard Weimer, 36 years old, was employed by Longview Fibre Company in Seattle as a corrugator machine operator. On the morning of October 4, 1975, he noticed a metal strap lying on the floor. When reaching out to pick up the strap, he experienced a sharp pain in the lower part of his back. After reporting the incident to his supervisor, Weimer went to the emergency room at Swedish Hospital where the physician on duty took X rays, administered an injection and gave him a prescription for Percodan. Weimer returned to the plant, but felt weak and dizzy, so went home for the remainder of the day.

The following Monday, October 6, Weimer consulted his family physician who referred him to an orthopedic surgeon. The orthopedist first examined Weimer on October 8. He concluded that Weimer had an acute lumbar disk problem, and advised bed rest. The doctor later admitted Weimer to the hospital when he experienced some aggravation of the pain while helping his wife move from an apartment. On December 15, the specialist performed a lumbar myelogram which revealed a defect at the right lumbosacral disk space consistent with a ruptured disk. A large ruptured disk was removed surgically on January 23, 1976.

Weimer filed an accident report on October 17, 1975, with the Department of Labor and Industries (Department). At first, the Department issued an order allowing the claim, then on December 22 reversed itself and rejected the claim. Weimer appealed to the Board of Industrial Insurance Appeals (Board), which ruled the claim should be allowed as a matter of law. The employer appealed and at trial a jury held against the claimant. That decision was upheld by the Court of Appeals, Division One.

I

Weimer assigns error to the giving of instruction No. 6, drafted by the trial court. Instruction No. 6 reads:

You are hereby instructed that in order to have an injury within the meaning of the Industrial Insurance Act, there must be evidence of a sudden and tangible happening of a traumatic nature.

A physical condition resulting from bodily movement required in the routine of a job is not within the purview of the statute.

But a physical condition resulting from bodily movement required by unusual routine such as an unusual or awkward position in performing one's duties is within the purview of the statute.

The industrial insurance act defines "injury" as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100. One of the major cases defining injury under the act is *McCormick Lumber Co. v. Department of Labor & Indus.*, 7 Wn.2d 40, 108 P.2d 807 (1941). There the court allowed recovery when a logger afflicted with a heart disease collapsed and died while sawing a tree. After an exhaustive review of cases interpreting the industrial insurance act's definition of injury, the court concluded that the accepted rule as to what constitutes a compensable injury is:

An accident aris[ing] out of the employment when the required exertion producing the accident is too great for the man undertaking the work, *whatever the degree of*

*exertion or the condition of the workman's health.*

*McCormick,* at 59. This definition had been accepted in prior and subsequent decisions covering a period of over 40 years before *Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 323 P.2d 241 (1958), expressly overruled *McCormick* and its progeny. In *Windust,* the court held that where a workman, suffering from a *heart* condition, collapsed and died while performing a "routine act of ten years' standing", his death was not the result of an injury within the purview of RCW 51.08.100. *Windust,* at 38. The case involved a ready–mix concrete truck driver. He fell dead as he was stepping up to look into a drum to see how much concrete it contained. The court in *Windust* evidenced a recognition that heart attacks are primarily related to long–term disease and may be unrelated to the particular employment hazard to which the worker may be subjected. Thus, in the area of heart disease, more than usual or ordinary exertion is needed to establish an injury under the act. *See also Lawson v. Department of Labor & Indus.,* 63 Wn.2d 79, 385 P.2d 537 (1963); *Woods v. Department of Labor & Indus.,* 62 Wn.2d 389, 382 P.2d 1014 (1963); *Porter v. Department of Labor & Indus.,* 51 Wn.2d 634, 320 P.2d 1099 (1958).

In *Boeing Co. v. Fine,* 65 Wn.2d 169, 396 P.2d 145 (1964), this court refused to extend the unusual or extraordinary physical exertion test of *Windust* to injuries involving the back, instead finding that

> In this state the statutory definition of "injury" is met when the bodily movements required by the job in the course of employment have produced a sudden and immediate back injury. *Dayton v. Department of Labor & Industries,* 45 Wn. (2d) 797, 278 P. (2d) 319 (1954).

*Boeing,* at 170. In *Boeing,* Dorothy Fine, a clerk typist, sustained an extreme injury to her lower back while reaching for a telephone. Fine's claim was upheld on appeal. In affirming the claim, the court indicated:

> the inquiry has usually been directed not to whether there has been an "injury," but to whether the bodily

failure, if sudden and immediate, was proximately caused by an exertion . . . The requirements of a "traumatic" happening, and one "occurring from without," are satisfied by the sudden strain, originating outside the body in answer to the demands of the job, which, when applied internally, proximately caused the bodily failure.

*Boeing,* at 170–71. In so ruling, we distinguished claims involving back injuries from those involving heart attacks on the basis that heart attacks are the result of long–term disease and may be unrelated to the particular employment hazard whereas "*the trauma of everyday life is recognized as the chief cause of most* [back injuries]." *Boeing,* at 172 n.1.

While holding the unusual strain requirement of *Windust* inapplicable to injuries involving bodily mechanical structures, the court in *Boeing* intimated that more than usual exertion was required:

the plaintiff is only required to make a *prima facie showing that some unusual or awkward angle,* required by the conditions or demands of the job, *caused the injury to the mechanical structure.* To require more than this would place an insurmountable burden of proof on the workman.

(Italics ours.) *Boeing,* at 173.

This language appears at a point in the opinion where the court rejected the unusual exertion requirement for back injuries on the basis that back injuries and heart ailments differ. By way of illustration, the court noted that a normal back may be injured through slight or usual strain "applied at an unusually different angle". *Boeing,* at 172. The Board held this statement to be dicta; however, some courts have construed this language as creating an additional requirement. *See, e.g., Vaupell Indus. Plastics, Inc. v. Department of Labor & Indus.,* 4 Wn. App. 430, 481 P.2d 577 (1971).

In the instant case, as evidenced by the giving of instruction No. 6, the trial court obviously believed that under *Boeing,* the worker must show that some unusual or awkward angle required by the conditions of the job had caused

the injury for purposes of coverage under the act. In view of the confusion engendered by the language in *Boeing,* we hereby overrule that language which purports to require an additional showing of an unusual or awkward angle. In light of our decision, both paragraphs 2 and 3 of instruction No. 6 are clearly incorrect.

## II

■ Since the erroneous instruction involved a material element, it is presumed prejudicial. *Franks v. Department of Labor & Indus.,* 35 Wn.2d 763, 215 P.2d 416 (1950). There is nothing in the record indicating that the error was harmless, therefore, petitioner should be entitled to a new trial. We find, however, after careful review of the record in this matter, petitioner sustained a compensable injury under the industrial insurance act and is entitled to recovery under the act as a matter of law.

Both medical witnesses, Dr. Mary McGregor, Weimer's family physician, and Dr. Edwin L. Laurnen, the orthopedic surgeon who began treating Weimer soon after the injury, testified that the back injury was causally related to the bending over and picking up of the metal strap.

When questioned by counsel for Weimer, Dr. McGregor testified as follows:

Q Let me ask you this. He reported to you this bending incident at work on the fourth of October, do you feel that that incident aggravated the underlying condition?
A The bending over?
Q Yes.
A Yes.

Dr. Laurnen testified as to Weimer's past medical history and as to his findings from the examination:

Q Doctor, assuming that the symptoms relative to his low back did develop as he related to you in the history, that he was bending over to pick up a metal strap and he developed a sudden sharp onset of low back pain, do you have an opinion as to whether or not the low back condition, which you treated, is causally related to the incident of bending over to pick

up these metal straps?

A  I would say it was related to the bending over, yes.

No evidence to the contrary was introduced.

■ For purposes of coverage of the industrial insurance act, it is sufficient to sustain an injury which aggravates a preexisting infirmity. *Harbor Plywood Corp. v. Department of Labor & Indus.,* 48 Wn.2d 553, 295 P.2d 310 (1956); *Jacobson v. Department of Labor & Indus.,* 37 Wn.2d 444, 224 P.2d 338 (1950); *Wendt v. Department of Labor & Indus.,* 18 Wn. App. 674, 571 P.2d 229 (1977); *Shea v. Department of Labor & Indus.,* 12 Wn. App. 410, 529 P.2d 1131 (1974). Though Weimer's medical history evidences prior instances of back troubles, the testimony of the two medical experts indicates the present back injury was causally related to the picking up of the metal strap. Thus, petitioner is entitled to recovery under the industrial insurance act for this aggravation.

The claimant moved the trial court for a summary judgment, a directed verdict, and a judgment notwithstanding the verdict. In view of the confusion surrounding *Boeing,* reasonable minds could and did differ. Therefore, the trial court cannot be faulted for not granting any of the requested motions. However, in view of our partial overruling of *Boeing,* we now hold that the trial court should affirm the Board's finding that the claimant is covered as a matter of law.

A bodily movement (bending over) which was taken in response to a requirement of the job (lifting a metal strap) was a proximate cause of an internal bodily injury (disk condition).

III

In light of our decision, we need not reach the remaining assignments of error. We remand to the trial court for entry of judgment in accordance with this opinion.

ROSELLINI, DOLLIVER, WILLIAMS, and DORE, JJ., concur.

BRACHTENBACH, C.J. (dissenting)—I concur with the

majority's holding regarding the rule of law. However, I cannot agree with the majority's holding that petitioner is entitled to judgment as a matter of law. The majority does not state at what procedural stage this holding as a matter of law should have been made. It might have been so held on (1) a summary judgment motion, or (2) on motion for a directed verdict or (3) on a motion for judgment notwithstanding the verdict. The majority does not discuss the test to be applied thereto.

At best the record on appeal is inadequate. Petitioner claims he was entitled to a summary judgment. No such motion is in the clerk's papers. From the verbatim report of proceedings it appears that such a motion was denied prior to trial. Petitioner's oral motion for summary judgment made at the beginning of the trial did not comply with CR 56.

Petitioner moved for a directed verdict on the grounds stated in the motion for summary judgment, but that does not provide the specificity required by CR 50(a). Nothing further was discussed on the record. After the verdict, the petitioner moved for a judgment notwithstanding the verdict.

Despite the difficulties inherent in the record, we must examine each of these motions if we are to consider holding for petitioner as a matter of law. Turning to those procedural steps where the court might have ruled as a matter of law, we must first evaluate the motion for summary judgment. The test is whether there was a genuine issue as to a material fact. *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975). Lacking the motion and memorandum, it is difficult to determine upon what petitioner relied to meet that test. A subsequent review of the record will illuminate this inquiry.

Petitioner was entitled to a directed verdict only if, viewing "the evidence and all reasonable inferences therefrom in a light most favorable to the nonmoving party. . . . there is no evidence or reasonable inference therefrom against the contention of the moving party." (Citations

omitted.) *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 93, 549 P.2d 483 (1976). Presumably the entire record of the proceedings of the board of appeals was before the jury but the record of proceedings does not show that; again a later review of the record will be helpful.

Finally, petitioner was entitled to a judgment notwithstanding the verdict only if the court can say as a matter of law that there is neither evidence nor reasonable inference from the evidence to sustain the verdict. It requires that evidence be interpreted more strongly against the moving party. *Scobba v. Seattle*, 31 Wn.2d 685, 198 P.2d 805 (1948).

Normally these three motions would have potentially different components because of the different stages of trial at which they are made. As noted, we lack the specificity required for both the summary judgment and directed verdict motions, but assume that petitioner relied upon the record before the board of appeals.

To judge the propriety of granting any of petitioner's motions, it is necessary to evaluate the proceedings before the board of appeals. That record reveals a good deal more than quoted by the majority. Petitioner had a preexisting unstable low back condition and a history of making complaints about it at work. In August, about 6 weeks before the bending–over incident, he had such a severe lumbosacral back pain, unrelated to work, that he sought emergency treatment at a hospital. His doctor detected a narrowing of a vertebral disk space at that time. The condition was severe enough that the physician certified that petitioner was totally and continuously disabled and unable to work from August 25 to September 1. Two weeks before the bending–over incident, he was still under the doctor's care for this condition.

The orthopedic surgeon testified that when he saw petitioner after the incident at work, his complaints were consistent with those existing before the bending–over event. The doctor said "it was all the same." While this doctor believed the pain was more severe after the October inci-

dent, he was not sure whether the *condition* of petitioner's low back was worse or more severe than before the incident. Another doctor said that when petitioner bent over, "this thing went again." After the work incident, petitioner had been improving to the extent that he was expected to return to work, without surgery, until the condition was aggravated by nonwork–related activity.

The difficulty with the testimony relied upon by the majority is that neither the questions nor the answers are sufficiently precise or comprehensive to permit a holding as a matter of law. One answer only concludes that the bending over aggravated the underlying condition. The other question asked was whether the treated low back condition was *causally related* to the bending. The doctor answered that it was *related*, implying that it was not causally related. Together, these answers come nowhere close to proving all four required elements of a statutory "injury": a sudden and tangible happening, of a traumatic nature, producing an immediate and prompt result and occurring from without.

Taking all these factors into account, we cannot hold that there was no material issue as to a material fact, or no evidence or reasonable inference against petitioner, or no evidence or reasonable inference to support the verdict. In light of the mandate to interpret evidence in favor of the nonmoving party in this context, there was sufficient evidence or reasonable inference that the bending–over incident did not meet all the elements of an RCW 51.08.100 "injury". Therefore, while the medical evidence might be sufficient to support a verdict for the claimant, it certainly was not conclusive enough to mandate a holding as a matter of law. I would remand the matter to the Superior Court for retrial.

STAFFORD, UTTER, and HICKS, JJ., concur with BRACHTENBACH, C.J.

Reconsideration denied July 10, 1981.